JERSEY SHORE MEDICAL CENTER–FITKIN HOSPITAL, A COR-
PORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-AP-
PELLANT, v. ESTATE OF SIDNEY BAUM (DECEASED), DE-
FENDANT, AND CAROLYN H. BAUM, DEFENDANT-RESPON-
DENT.

Argued March 3, 1980—Decided July 2, 1980.

138

*Robert A. Abrams* argued the cause for appellant (*Patterson & Abrams*, attorneys; *John A. Covino* on the brief).

*Alexander Levchuk* argued the cause for respondent.

The opinion of the Court was delivered by

POLLOCK, J.

This case presents the novel question whether, in the absence of an express agreement, a widow is liable for the hospital and medical expenses of the last illness of her deceased husband. The trial court granted summary judgment for the defendant, Carolyn Baum, and plaintiff, Jersey Shore Medical Center-Fitkin Hospital, appealed. We granted direct certification. 81 *N.J.* 358 (1979). We now affirm the summary judgment for Mrs. Baum.

Sidney Baum, defendant's late husband, died at the hospital after a long illness which exhausted his medicaid benefits and left a balance due the hospital of $25,709.50. He owned no assets at the time of his death, except his interest as tenant by the entirety with Mrs. Baum in their home, and, presumably, miscellaneous personal assets of minimal value. His estate was insolvent, and no one sought letters of administration. Although the estate is named as a party, it has not been represented in these proceedings.

Mrs. Baum owns no assets of any value other than her home, which is assessed at $25,200. She never agreed to pay her husband's hospital bill.

The hospital sued Mrs. Baum and the estate of Mr. Baum for the balance due on Mr. Baum's bill, contending that the common law rule that imposed liability on a husband for the necessaries furnished to his wife should be extended so that a wife would be liable for the necessaries, such as expenses of a last illness, of her husband. That contention is based on the increasing inde-

pendence of women, the emerging concept of marriage as a partnership, and the belief that husbands and wives should be treated equally.

We conclude that the common law rule must yield to the evolving interdependence of married men and women and to the reality that a marriage is a partnership. Consequently, we declare that both spouses are liable for necessary expenses incurred by either spouse in the course of the marriage. As long as the marriage subsists, the financial resources of both spouses should be available to pay a creditor who provides necessary goods and services to either spouse. That conclusion comports with our belief that in most marriages a husband and wife consider themselves as a financial unit in paying necessary expenses incurred by either marital partner. However, a judgment creditor must first seek satisfaction from the income and other property of the spouse who incurred the debt. If those financial resources are insufficient, the creditor may then seek satisfaction from the income and property of the other spouse.

## I

The common law rule imposing liability on a husband for his wife's necessaries derived from the husband's obligation to support his wife. *See Capodanno v. Capodanno*, 58 *N.J.* 113 (1971); *Bonanno v. Bonanno*, 4 *N.J.* 268 (1950). That duty arises not from principles of contract law, but from the marriage relation and the public policy of the State. *Bonanno v. Bonanno, supra* at 273; *Turi v. Turi*, 34 *N.J.Super.* 313 (App. Div. 1975) (action for separate maintenance); 10 *N.J.Practice* (Silverman, *Marriage, Divorce and Separation* ), § 331 (1978). *See generally* 41 *Am.Jur.*2d Husband and Wife §§ 329 *et seq.* (1968). The husband's duty developed in an era when a wife depended on her husband for support and, in exchange, provided him with her services and society. *See, e. g., Howard v. Howard*, 135 *N.J.Eq.* 55 (E. & A. 1944); *Fallon v. Fallon*, 111 *N.J.Eq.* 512 (E. & A. 1932). A wife had no duty at common law to support her husband. *See* 41 *Am.Jur.*2d Husband and Wife § 334.

The husband's duty to support his wife led to the imposition of liability on him for necessaries furnished to her. The basis of liability for expenses incurred by the wife was the husband's presumed failure to provide adequate support. *Saks & Co. v. Bennett,* 12 *N.J.Super.* 316 (App. Div. 1951); 10 *N.J.Practice* §§ 334, 335; 41 *Am.Jur.2d* §§ 348, 349. There is no doubt that the cost of hospital and medical care qualifies as a necessary expense. *Capodanno v. Capodanno, supra. See generally* 10 *N.J.Practice* §§ 335 *et seq.* Accordingly, in the converse of the present case, a widower was found liable for the payment of the expenses of the last illness of his wife. *Foster v. Reiss,* 31 *N.J.Super.* 496, 508 (App. Div. 1954), rev'd on other grounds 18 *N.J.* 41 (1955). *See also DeLisle v. Reeves,* 96 *N.J.Eq.* 416, 418 (E. & A. 1924) (administrator of deceased wife's estate not under a duty to pay nursing and funeral expenses of wife). However, a wife was not bound to pay the expense of the last illness of her husband unless she assumed that obligation. 41 *Am.Jur.2d* Husband and Wife § 382 at 320.

Statutes have modified the rights and duties of husband and wife in dealing with each other and with creditors, but not regarding necessary expenses. For example, *N.J.S.A.* 2A:34–23 imposes the same duties of alimony or support on both spouses in matrimonial actions and provides for the equitable distribution of property on divorce. However, that statute does not apply to the liability of one spouse to a creditor for necessaries acquired by the other spouse.

Similarly, the Married Woman's Act declares that the separate property of a married woman shall not be liable for her husband's debts. *N.J.S.A.* 37:2–15. A corresponding provision states that a husband shall not be liable for the debts of his wife contracted in her own name. *N.J.S.A.* 37:2–10. However, the Married Woman's Act did not alter the husband's duty to pay for the necessary expenses of his wife. 10 *N.J.Practice* § 332; 41 *Am.Jur.2d* Husband and Wife §§ 329, 348. *See also Capodanno v. Capodanno, supra,* 58 *N.J.* at 119; *Bonanno v. Bonanno, supra,* 4 *N.J.* at 274. A husband has an independent duty arising out of the marital relationship to pay for the necessary

expenses of his wife. In effect, a wife's necessaries are her husband's debts. Consequently, the Married Woman's Act, which protects a husband from the debts of his wife, does not affect his independent liability.

Here, the hospital claims that expenses of the last illness of Mr. Baum should be treated like funeral expenses. A husband is primarily liable for his wife's funeral expenses, *Stryker v. Sands*, 4 *N.J.* 182 (1950); but, in general, a wife is not primarily liable for her husband's funeral expenses. *See Donato v. Mason*, 117 *N.J.Super.* 1, 3–4 (App. Div. 1971). The hospital argues that, although a wife is immune from liability for the debts of her husband under *N.J.S.A.* 37:2–15, the immunity does not extend to debts of the husband's estate. The argument continues that, since funeral expenses of the husband are debts of his estate, the statute does not accord immunity to the wife from liability for those debts.

There are two flaws in that argument. One, already discussed, is that it is the common law, not legislative definition of "debts", that has led to disparate treatment of husbands and wives. Consequently, it is the common law, not a statute, that results in unequal treatment of husbands and wives. The second flaw is that last illness expenses are necessary expenses of the deceased spouse. Those expenses are incurred while the spouse is living, and a creditor can take action to obtain payment while that spouse is alive. In this respect, last illness expenses differ from funeral expenses and should not be characterized as a debt of the estate rather than the deceased.

The hospital contends the present rule, which protects a wife from liability for her husband's necessary expenses without according a similar protection to a husband, violates the equal protection clause of the Fourteenth Amendment of the United States Constitution. The focus of the hospital's contention is on the Married Woman's Act, *N.J.S.A.* 37:2–15, which states that a wife is not liable for her husband's debts. However, as previously discussed, the unequal treatment of husbands and wives flows not from the statute, but the common law. Consequently, the more appropriate target of the unequal protection attack is the common law rule.

## II

Although not raised by Mrs. Baum, we will address the question of the standing of the hospital to challenge the common law rule. The hospital has standing to challenge that rule if it has a sufficient stake in the outcome of the case. *Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N. Y.*, 58 *N.J.* 98, 107 (1971). Where the public interest is involved, only a slight additional private interest is necessary to confer standing. *Salorio v. Glaser*, 82 *N.J.* 482, 491 (1980) (slip opinion at 6). A husband would have standing to challenge the common law rule because it places a greater burden on husbands than on wives. The question becomes whether the hospital as a creditor of the husband has standing to advance that argument.

Ordinarily, a litigant may not claim standing to assert the rights of a third party. *See State v. Norflett*, 67 *N.J.* 268, 276 n. 7 (1975); *Frazier v. Liberty Mutual Insurance Company*, 150 *N.J.Super.* 123, 137 (App. Div. 1977). However, standing to assert the rights of third parties is appropriate if the litigant can show sufficient personal stake and adverseness so that the Court is not asked to render an advisory opinion. *Id.*

In this case neither the estate of the husband nor any party other than the hospital could assert the husband's rights. As indicated, no letters of administration have been issued for the estate of Sidney Baum, the estate is not represented in these proceedings and, in any event, it is insolvent. The only time a husband could raise the issue is if a hospital sued him to recover the last illness expenses of his wife. When expenses are sought from the wife, the creditor is an appropriate party to assert the husband's rights. Accordingly, we conclude that the hospital has a sufficient stake in this controversy to accord it standing to challenge the doctrine of necessaries.

## III

We next consider the impact of the federal and state constitutions on the common law rule. The Fourteenth Amendment of the United States Constitution applies to state common

law as well as statutory law. The applicability of the equal protection clause depends not on whether a state has exercised its power in any particular form, but whether it has, in fact, exercised that power. *New York Times Co. v. Sullivan*, 376 *U.S.* 254, 265, 84 *S.Ct.* 710, 718, 11 *L.Ed.*2d 686, 697 (1964). A state is obligated to provide equal protection of its laws not only in the acts of its legislature, but also in the decisions of its courts. Stated otherwise, "It has been recognized that the action of state courts in enforcing a substantive common-law rule formulated by those courts, may result in the denial of rights guaranteed by the Fourteenth Amendment, even though the judicial proceedings in such cases may have been in complete accord with the most rigorous conceptions of procedural due process." *Shelley v. Kraemer*, 334 *U.S.* 1, 17, 68 *S.Ct.* 836, 844, 92 *L.Ed.* 1161, 1182–1183 (1948) (footnote omitted). *See also Nashville, C. & St. L. Ry. v. Browning*, 310 *U.S.* 362, 369, 60 *S.Ct.* 968, 972, 84 *L.Ed.* 1254, 1258 (1940). *See generally* Tribal, *American Constitutional Law* § 18–6 (1978). Accordingly, the discrimination against husbands which results from application of the New Jersey common law doctrine of necessaries may be challenged under the equal protection clause of the Fourteenth Amendment.

In support of its argument that wives should be liable for the debts of their husbands, the hospital relies on *Orr v. Orr*, 440 *U.S.* 268, 99 *S.Ct.* 1102, 59 *L.Ed.*2d 306 (1979). In *Orr*, the United States Supreme Court held that a statute under which husbands, but not wives, might be ordered to pay alimony, violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Orr* followed a line of cases in which the Supreme Court rejected gender-based classifications. *See Califano v. Goldfarb*, 430 *U.S.* 199, 97 *S.Ct.* 1021, 51 *L.Ed.*2d 270 (1977) (social security provision allowing benefits to widower only if he was receiving half of his support from his wife is unconstitutional); *Craig v. Boren*, 429 *U.S.* 190, 97 *S.Ct.* 451, 50 *L.Ed.*2d 397 (1977) (law prohibiting beer sales to males under 21 and females under 18 is unconstitutional); *Stanton v. Stanton*, 421 *U.S.* 7, 95 *S.Ct.* 1373, 43 *L.Ed.*2d 688 (1975) (law

setting age of majority of women at 18, and men at 21 is unconstitutional); *Weinberger v. Wiesenfeld*, 420 *U.S.* 636, 95 *S.Ct.* 1225, 43 *L.Ed.*2d 514 (1975) (social security law providing that survivors' benefits based on deceased husband's earnings are payable to wife and children but benefits based on deceased wife's earnings are payable only to children is unconstitutional); *Frontiero v. Richardson*, 411 *U.S.* 677, 93 *S.Ct.* 1764, 36 *L.Ed.*2d 583 (1973) (requirement that a wife must show her husband is actually dependent in order to claim him as a dependent for purposes of armed forces benefits allowances is unconstitutional); *Reed v. Reed*, 404 *U.S.* 71, 92 *S.Ct.* 251, 30 *L.Ed.*2d 225 (1971) (state law giving preference to men as administrators of estates violates equal protection). *But see Califano v. Webster*, 430 *U.S.* 313, 97 *S.Ct.* 1192, 51 *L.Ed.*2d 360 (1977) (upholding method of calculating old age insurance benefits where male required to include three years more than female in average wage determination); *Schlessinger v. Ballard*, 419 *U.S.* 498, 95 *S.Ct.* 572, 42 *L.Ed.*2d 610 (1975) (upholding different requirements for mandatory discharge without promotion from navy); *Kahn v. Shevin*, 416 *U.S.* 351, 94 *S.Ct.* 1734, 40 *L.Ed.*2d 189 (1975) (upholding state tax exemption for widows only as having valid compensatory objective). Since *Orr*, the Court has reaffirmed the principle that the concept of the wife as the dependent spouse is outdated. *See Wengler v. Druggists Mutual Ins. Co.*, 446 *U.S.* 142, 100 *S.Ct.* 1540, 64 *L.Ed.*2d 107 (1980) (invalidating a state workers' compensation statute that required widowers but not widows to prove dependency); *Califano v. Westcott*, 443 *U.S.* 76, 99 *S.Ct.* 2655, 61 *L.Ed.*2d 382 (1979) (social security law providing aid to families with dependent children when husband becomes unemployed, but not when wife becomes unemployed, is unconstitutional).

The basis of the decision in *Orr* was that the female is no longer " 'destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas.' " *Orr, supra*, 440 *U.S.* at 280, 99 *S.Ct.* at 1112, 59 *L.Ed.*2d at 319, quoting *Stanton v. Stanton, supra*, 421 *U.S.* at 14–15, 95 *S.Ct.* at 1373, 43 *L.Ed.*2d at 688. In holding that the alimony

statute violated equal protection, the Court rejected the "old notion" that the man is solely responsible to provide a home and its essentials. *Orr, supra,* 440 *U.S.* at 279–280, 99 *S.Ct.* at 1112, 59 *L.Ed.*2d at 319. Although our focus is not on a statute, but a common law rule, the same reasoning that led to the invalidation of an alimony statute in *Orr* now requires modification of the common law rule to achieve a fairer distribution of the cost of necessaries incurred by either spouse in the course of their marriage.

A modern marriage is a partnership, with neither spouse necessarily dependent financially on the other. Many women have shed their traditional dependence on their husbands for active roles as income earners. *Lepis v. Lepis,* 83 *N.J.* 139, 156 (1980) (allowing modification of separation agreement because of changed circumstances); *Tomarchio v. Township of Greenwich,* 75 *N.J.* 62, 73 (1977) (holding that a workers' compensation statute that requires widowers, but not widows, to prove dependence in order to recover benefits was unconstitutional); *In re Gaulkin,* 69 *N.J.* 185, 193 (1976) (abolishing prohibition on the wife of a judge from engaging in political activity).

With increasing frequency, wives contribute significantly to the financial well-being of their families. In 1977, in 48.8% of families with both a husband and wife, both spouses were wage earners. U.S. Bureau of Labor Statistics, *Marital and Family Characteristics of Workers, 1970 to 1978,* 50, Table 1 (Special Labor Force Report # 219). In some cases, a wife may even be the primary source of support. *Id.*

Interdependence is the hallmark of a modern marriage. The common law rule imposing liability on husbands, but not wives, is an anachronism that no longer fits contemporary society. Under the present rule, even a husband who is economically dependent on his wife would be liable for the necessary expenses of both spouses, while the wife would not be liable for either. In perpetuating additional benefits for a wife when the benefits may not be needed, the rule runs afoul of the equal protection clause. *Orr, supra,* 440 *U.S.* at 282–283, 99 *S.Ct.* at 1113, 59 *L.Ed.*2d at 321.

We recognize that in many instances the present rule correctly operates to favor a needy wife. Even wives who have entered the work force generally earn substantially less than their husbands. *See* U.S. Bureau of Labor Statistics, *Marital and Family Characteristics of Workers, 1970–1978, supra* at A–50. The same study showed that over 45% of all married women with "husband present" had no work experience in 1977. *Id.* at A–36. However, that is an insufficient reason to retain a gender based classification that denigrates the efforts of women who contribute to the finances of their families and denies equal protection to husbands. *Weinberger v. Wiesenfeld, supra,* 420 *U.S.* at 645, 95 *S.Ct.* at 1232, 43 *L.Ed.*2d at 523.

Although the New Jersey Constitution does not contain an equal protection clause, the same result follows as under the United States Constitution. The relevant section of the New Jersey Constitution provides "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." Art. I, par. 1. In interpreting that section, this Court stated that it provides comparable or superior protection against unequal protection of the law. *Peper v. Princeton University Board of Trustees,* 77 *N.J.* 55, 79 (1978) (discrimination on the basis of gender in private employment may deny equal protection of the laws under Art. I, par. 1 of the New Jersey Constitution). For reasons previously set forth, we conclude that the rule concerning necessaries with its inherent discrimination against husbands constitutes a denial of equal protection of the laws under the New Jersey Constitution.

Even without a mandate for change under the New Jersey and United States Constitutions, the common law has an inherent capacity to adapt to changes such as the movement of married women toward economic equality. *See, e. g., Immer v. Risko,* 56 *N.J.* 482, 488 (1970) (abolishing interspousal immunity for torts arising out of negligent operation of automobile). At one time, the status of married women might have justified

placing on a husband the duty to pay for his wife's necessary expenses without a correlative duty on her part. As previously discussed, the imposition of that duty no longer comports with the role of a contemporary wife and concepts of a modern marriage. The common law must adapt to the progress of women in achieving economic equality and to the mutual sharing of all obligations by husbands and wives.

## IV

There are various alternatives available in establishing a gender-neutral rule for the payment of necessary expenses incurred by either spouse. One alternative is to read literally the Married Woman's Act, *N.J.S.A.* 37:2–10 and 15. That act forms a gender-neutral scheme under which each spouse is independent of the other. However, literal application of the act would leave creditors of a dependent spouse without recourse to the only realistic source of payment, the financially independent spouse. The act tends to ignore that in a modern marriage husbands and wives, whether they contribute income or domestic services, are a financial unit. A necessary expense incurred by one spouse benefits both. In a viable marriage, husbands and wives ordinarily do not distinguish their financial obligations on the basis of which one incurred the debt. Consequently, literal application of the Married Woman's Act would not comport with the expectations of husbands, wives, or their creditors.

Another alternative is to extend the common law rule and hold each spouse completely liable for the other's debts. Although that rule would treat spouses equally, it would be equality with a vengeance. The rule would result in the immediate exposure of the property of one spouse for a debt incurred by the other spouse. A creditor would receive the same benefits as if both spouses had agreed to joint liability. Neither equity nor reality justifies imposing unqualified liability on one spouse for the debts of the other or exempting one spouse from liability for the necessary expenses of the other.

In other states, legislatures have attempted to treat spouses fairly without eliminating liability for necessary expenses. Some states have enacted family expense statutes that declare expenses of the family are chargeable to the property of both husband and wife. *See, e. g., Ill.Rev.Stat. c.* 68, § 15. Some of those statutes apparently recognize the devastating impact of the cost of terminal illnesses and expressly except the expenses of the last illness of either spouse, imposing primary liability on the estate of the deceased spouse. *See, e. g., Conn.Gen.Stat.* § 46–10. Other states have passed equal rights amendments declaring that equality of rights shall not be denied or abridged because of the sex of an individual. *See generally Annotation,* 90 *A.L.R.3d* 158 (1979). In Pennsylvania, which has adopted an equal rights amendment, one court has held that a wife may be liable for her husband's last illness expenses. *See Albert Einstein Medical Center v. Gold,* 66 *Pa.D. & C.*2d 347 (C.P. 1974). Another Pennsylvania court, also relying on the equal rights amendment, invalidated the common law rule imposing liability for necessaries on a husband. *Albert Einstein Medical Center v. Nathans,* 27 *Pa.Fiduc.* 561 (C.P. 1977).

The problem of making each spouse liable to support the other is discussed in Brown, *et al., The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 *Yale L.J.* 871, 946 (1971):

> If husband and wife had equal resources and earning capacity, neither would have a claim for support against the other. However, if one spouse were a wage earner and the other spouse performed uncompensated domestic labor for the family, the wage-earning spouse would owe a duty of support to the spouse who worked in the home. Creating in each spouse equal liability for support might give creditors an advantage in some instances where they would not currently be able to reach the wife's resources. If this extra liability created hardship for families, the legislature could make rules limiting the extent of creditors' access to a family's resources.

Our Legislature has indicated its preference for a gender-neutral approach in *N.J.S.A.* 2A:34–23, which provides that alimony or maintenance may be awarded to either party in accordance with "the circumstances of the parties and the nature of the case." The statute also provides on divorce for the equitable distribution of property acquired during the marriage, and does

not distinguish between husbands and wives in either instance. However, the New Jersey Legislature has not addressed the specific problem of family expenses.

The appropriate result concerning the liability for necessaries follows from our view that "marriage is a shared enterprise, a joint undertaking, that in many ways  .  .  . is akin to a partnership." *Rothman v. Rothman*, 65 *N.J.* 219, 229 (1974) (construing the equitable distribution statute, *N.J.S.A.* 2A:34–23). We hold that both spouses are liable for the necessary expenses incurred by either spouse. In a viable marriage, the marital partners can decide between themselves how to pay their debts. A creditor providing necessaries to one spouse can assume that the financial resources of both spouses are available for payment. However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient.

Normally a person is not liable for the debt of another in the absence of an agreement. The imposition of liability based on marital status alone is an exception to that rule. Nonetheless, it is a justifiable exception. The reasonable expectations of marital partners are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse. However, it would be unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses. In the absence of such an agreement, a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient. Marshalling the marital resources in that manner grants some protection to a spouse who has not expressly consented to that debt.

## V

The remaining consideration is whether the rule declared in this opinion should be applied to the hospital's claim against

Mrs. Baum. In determining whether to apply our decision retrospectively or prospectively, our goal is to achieve substantial justice in view of the reasonable expectations of the parties. *Barone v. Harra,* 77 *N.J.* 276, 281 (1978) (decision establishing compensability under workers' compensation act for injuries occurring during lunch break would not be applied retroactively). Reliance on the prior law is a primary factor. *Darrow v. Hanover Township,* 58 *N.J.* 410, 416 (1971) (abrogation of interspousal tort immunity in automobile negligence action applied prospectively). Mrs. Baum properly assumed that she incurred no liability when the hospital provided services to her husband, and the hospital did not expect payment from her in providing those services. Since both parties relied on the prior law when the expense was incurred, it would be unfair to apply the rule retrospectively and impose on Mrs. Baum liability for her husband's hospital bill.

On the record before us, there is no basis to hold Mrs. Baum liable for her husband's obligation to the hospital. We conclude that our holding should be applied prospectively; that is, only to debts incurred after the date of this decision. *Merenoff v. Merenoff,* 76 *N.J.* 536, 560 (1978) (abolition of interspousal tort immunity in personal injury actions). *See also Tomarchio v. Township of Greenwich, supra,* 75 *N.J.* at 78 (invalidation of proof of dependency requirement in workers' compensation statute applied prospectively); *Pascucci v. Vagott,* 71 *N.J.* 40, 50 (1976) (invalidity of welfare eligibility regulation applied prospectively to allow for legislative action and to avoid administrative inconvenience); *Darrow v. Hanover Township, supra,* 58 *N.J.* at 420.

We affirm the summary judgment in favor of defendant.

SULLIVAN, J., concurring in the result.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK —6.

*For reversal*—None.