243 N.J. Super. 175 (1990)
578 A.2d 1250
DUBOIS, SHEEHAN, HAMILTON AND DUBOIS, PLAINTIFF-APPELLANT,
v.
SUSAN DELARM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 14, 1990.
Decided August 10, 1990.
*177 Before Judges PETRELLA, O'BRIEN and STERN.
DuBois, Sheehan, Hamilton, & DuBois, attorneys for appellant (Daniel M. Replogle, III on the brief).
Applebaum and Goldfield, attorneys for respondent (Mitchell Lee Goldfield on the brief).
The opinion of the court was delivered by STERN, J.A.D.
In this case, concerning application of the "doctrine of necessaries" to legal expenses, plaintiff appeals from a judgment of no cause for action in favor of defendant. We reverse and remand for further proceedings.
Kenneth O. DeLarm III (DeLarm) retained plaintiff law firm in 1983 to represent him in connection with a pending custody action involving one of his two children from his then marriage. The firm was initially contacted in connection with this representation by defendant[1], then DeLarm's "fiance". In early 1984, custody of the DeLarm children was awarded to DeLarm. Shortly thereafter, plaintiff commenced a divorce proceeding on behalf of DeLarm. Around the same time, defendant also requested plaintiff to obtain a copy of her judgment of divorce from her prior marriage so that a marriage license could be obtained to permit the marriage of DeLarm and defendant. They were married on July 22, 1984.
Shortly before the marriage, on July 9, 1984, DeLarm, defendant and her daughter were riding in defendant's vehicle which *178 DeLarm was driving. They were on their way to make arrangements for wedding decorations when the vehicle was involved in an accident, killing both occupants of the other car. The following day, while DeLarm was incapacitated, defendant called plaintiff and had a conversation with James T. Hamilton, Jr., concerning representation relating to the accident. DeLarm was ultimately charged with two counts of death by auto, N.J.S.A. 2C:11-5. Hamilton represented DeLarm before the grand jury; he was subsequently indicted, and the firm undertook to represent DeLarm in the criminal proceedings, including an application for P.T.I. and trial.
During the time of plaintiff's representation of him, DeLarm was dependent upon defendant for his support, as well as the support of his children.[2] He was also dependent upon her for travel, including trips to the plaintiff's office, since his driver's license had been suspended. Defendant accompanied DeLarm to all meetings with attorney Hamilton, and helped with their communications because, at least initially, DeLarm was either unable to understand the conversations or unable to make himself understood. He was taking pain medication and drugs at the time as a result of the accident. According to Hamilton, defendant "participated in everything" with respect to the representation.
In May 1985, DeLarm, represented by plaintiff, was acquitted on the charges of death by auto. In July, DeLarm was acquitted in municipal court of driving on the revoked list, but convicted and fined for careless driving arising from the same incident. Subsequently, in September 1985, still represented by plaintiff, DeLarm appeared before a hearing officer of the *179 Division of Motor Vehicles and obtained restoration of his driving privileges which had been suspended.
Shortly after receiving plaintiff's bill for services rendered, DeLarm filed a petition for bankruptcy and received a discharge several months later. He made only $581.70 in payments to plaintiff for its services rendered in all proceedings.
According to defendant, she had no discussions with Hamilton about the payment of fees. She testified that Hamilton would ask DeLarm for "money for certain things, and then Ken got the money from his father." She further denied telling Hamilton that he would be paid or not to worry about payment. While Hamilton recalled discussing an hourly rate, he didn't testify as to any agreement with defendant, and there was no written agreement. He did testify that she was "ecstatic" about the representation because of the impact incarceration would have had on the family's economic and emotional well-being.
On September 15, 1987, plaintiff sent defendant a copy of the bill with a covering letter that stated, in part, as follows:
Your outstanding balance with regard to the criminal action as stated in the statement attached is $10,853.58. Your outstanding balance with respect to the matrimonial action is $520.80. It is my understanding that you are the initial contact with this firm and that at that time you did promise to pay all amounts incurred in the representation of your family.
The letter also indicated that defendant could pursue arbitration, pursuant to Rule 1:20A, and that if plaintiff's representative did not hear from defendant within 30 days, and she took no action with respect to fee arbitration, he would be "forced to file suit against [her] in the Superior Court of New Jersey for the collection of these amounts." The letter closed by stating, "In lieu of that, if you would like to discuss a resolution of the matter based upon a payment plan which you would be comfortable with, I am willing to discuss the same."
The summons in this case was dated November 25, 1987 and, according to defendant's petition for fee arbitration, was served upon her on December 12, 1987. Defendant filed the fee *180 arbitration request dated May 18, 1989, beyond the 60 day period embodied in Rule 1:20A-3(a)[3]. The Committee sent a letter dated July 7, 1989 notifying the parties of the pending request for a hearing and requesting confirmation that the pending litigation be stayed pending resolution by the Committee. Although "whether or not a fee dispute will be arbitrated is a matter within the exclusive control of the client," Pressler, Current N.J. Court Rules, Comment R. 1:20A-1 et seq., (1990), the matter was tried in the Law Division on July 6, 1989, apparently without any request by either party for a stay of the proceedings.
Plaintiff now claims that the trial court was deprived of jurisdiction by submission of the matter to fee arbitration, and defendant contends she in essence waived the fee arbitration proceedings by not requesting a stay of the trial pending the fee arbitration. As the issue was not decided by the trial judge, we do not consider it. The subject may be addressed on the remand we order.
At the close of plaintiff's case, the trial judge concluded there was no contract or agreement between the parties rendering defendant responsible for the payment of DeLarm's legal fees, and dismissed the contract claim. We conclude that there was insufficient evidence to support plaintiff's contract claim, even giving plaintiff the benefit of all legitimate inferences that can flow from its case. See R. 4:37-2(b); Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969).[4]See also Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). Simply stated, plaintiff did not enter into an agreement with defendant with respect to the representation. See, generally, In the Matter of Palmieri, 76 N.J. 51, 58-59, 385 A.2d 856 *181 (1978); Procanik by Procanik v. Cillo, 226 N.J. Super. 132, 146, 543 A.2d 985 (1988), certif. den. 113 N.J. 357, 550 A.2d 466 (1988). See also Schoor Assoc. v. Holmdel Heights Const. Co., 68 N.J. 95, 102, 343 A.2d 401 (1975). Accordingly, we agree with the trial judge's conclusion that there was no basis for recovery on the theory of contract or as a result of any retainer.
In ruling at the close of trial on plaintiff's claim for recovery under the "doctrine of necessaries", the trial court stated:
So, basically, the issue before the Court is whether a spouse who hasn't directly incurred a debt can be legally responsible for the debt incurred by her husband on the grounds of necessity, when the services were for the defense of the husband regarding an indictable offense. And also, the question relates to whether the defendant in this case can be responsible for legal fees incurred by her present husband in getting his divorce from another woman prior to their marriage.
* * * * * * * *
Additionally, the question [is] whether all legal fees between persons who are married become the necessity. I agree with counsel for the plaintiff that perhaps, there may exist some type of legal fee that becomes a necessity, and that the Court will countenance under a particular factual pattern. But I say this is not the case. This case that is before the Court is not such a case, in my humble opinion. .. .
* * * * * * * *
... I don't know where we would go with this theory of necessity as it relates to legal fees, without really just thinking that each case must rest upon it's own factual pattern. The defendant in this case is still married, separated from her husband, who unfortunately has an alcoholic and narcotic problem. Now, if he goes out and commits a crime or gets caught, and he's on his way to prison, and he's represented [by the] Public Defender's Office or whoever, or some private attorney, legal fees are incurred. But if I were to adopt [plaintiff's] theory and the O'Neill theory, [see U.S. v. O'Neill, 478 F. Supp. 852 (E.D.Pa. 1979) infra], Mrs. DeLarm, she's responsible, the lawyer will sue her ...
* * * * * * * *
... I just can't bring myself to say that legal expenses incurred to defend a person for that criminal activity of which the spouse had, the non-incurring spouse had no relationship with at all should be an obligation of that non-incurring spouse. It just doesn't sit well with the Court ...
The trial judge continued:
Sure, she feared of her loved one going to jail. Does that create a legal obligation, because a spouse fears that her husband's going to jail, so because of that fear, you have to pay the legal fees? ...

*182 This is not the case. Maybe, maybe if this defendant was wholly responsible upon Mr. DeLarm, and everything is going to be destroyed, and so forth and so on, someone may start thinking your way; but then I don't think they could do it, because then to impose an obligation upon them, there would be no ability of that person to pay either, because he or she was wholly dependent....
And I agree, for the record, those fees were absolutely necessary to keep him out of jail. That's not the question. Were those fees a necessary expense of the marriage, as opposed to the peculiar benefit of the criminal defendant? That's the question.... Every legal expense is not a necessity. And I don't think New Jersey will ever go that way. So, it will have to be, I think, related to the nature of the underlying cause of action. And I think it should relate to the marriage in some way.... But to say legal fees to protect some spouse from going out, committing a crime, I'll wait for some other court to decide and give this Court direction.
We must now give that direction.
The leading case on "doctrine of necessaries" in this state (if not the country, see Annotation, "Wife's Liability for Necessaries Furnished Husband," 11 A.L.R.4th 1147, 1160 (1982)) is Jersey Shore Medical Center  Fitkin Hospital v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003 (1980). In Jersey Shore, plaintiff brought an action against the decedent's widow for the expenses in connection with his last illness. The Court held that the widow would not be liable for the expenses in the particular case because the principles there established would apply only prospectively. Id. at 152, 417 A.2d 1003. However, the Court concluded:
... that the common law rule must yield to the evolving interdependence of married men and women and to the reality that a marriage is a partnership. Consequently, we declare that both spouses are liable for necessary expenses incurred by either spouse in the course of the marriage. As long as the marriage subsists, the financial resources of both spouses should be available to pay a creditor who provides necessary goods and services to either spouse. That conclusion comports with our belief that in most marriages a husband and wife consider themselves as a financial unit in paying necessary expenses incurred by either marital partner. However, a judgment creditor must first seek satisfaction from the income and other property of the spouse who incurred the debt. If those financial resources are insufficient, the creditor may then seek satisfaction from the income and property of the other spouse. [84 N.J. at 141, 417 A.2d 1003].
In Jersey Shore, Justice Pollock discussed the history and interpretation of the common law and Married Women's Act, N.J.S.A. 37:2-15, as well as evolving doctrines of equal protection *183 and equal rights for women. He concluded that "the discrimination against husbands which results from application of the New Jersey common law doctrine of necessaries may be challenged under the equal protection clause of the Fourteenth Amendment." 84 N.J. at 145, 417 A.2d 1003. The Court further found that the evolution of the rights of married women and equal protection required the "modification of the common law rule to achieve a fairer distribution of the cost of necessaries incurred by either spouse in the course of their marriage." Id. at 147, 417 A.2d 1003.
Interdependence is the hallmark of a modern marriage. The common law rule imposing liability on husbands, but not wives, is an anachronism that no longer fits contemporary society. Under the present rule, even a husband who is economically dependent on his wife would be liable for the necessary expenses of both spouses, while the wife would not be liable for either. In perpetuating additional benefits for a wife when the benefits may not be needed, the rule runs afoul of the Equal Protection Clause. [Id. at 147, 417 A.2d 1003].
Thus, the Court concluded that "the rule concerning necessaries with its inherent discrimination against husbands [who were obligated to pay while women were protected by statute] constitutes a denial of equal protection of the laws under the New Jersey Constitution," id. at 148, 417 A.2d 1003, and that "[n]either equity nor reality justifies imposing unqualified liability on one spouse for the debts of the other or exempting one spouse from liability for the necessary expenses of the other." Id. at 149, 417 A.2d 1003.
The Court, however, developed a practical and equitable approach with respect to the relationship of the spouses and their mutual relationship to creditors, stating:
We hold that both spouses are liable for the necessary expenses incurred by either spouse. In a viable marriage, the marital partners can decide between themselves how to pay their debts. A creditor providing necessaries to one spouse can assume that the financial resources of both spouses are available for payment. However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient.
... The reasonable expectations of marital partners are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse. However, it would be *184 unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses. In the absence of such an agreement, a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient. Marshalling the marital resources in that matter grants some protection to a spouse who has not expressly consented to that debt. [Id. at 151, 417 A.2d 1003].
Recognizing the validity of the equal protection doctrine as developed in Jersey Shore, the modern cases generally hold that (1) neither spouse is obligated for the debts of the other, or (2) both spouses are obligated for the debts of the other, at least after the incurring spouse's resources have been consumed. See generally, Annotation, "Wife's Liability for Necessaries Furnished Husband," 11 A.L.R.4th 1160, 1162-1163 and Supplement (September 1989) at 62-63; compare Annotation, "Modern Status of Rule that Husband is Primarily or Solely Liable for Necessaries Furnished Wife", 20 A.L.R.4th 196 (1983); see also Darmanin v. Darmanin, 224 N.J. Super. 427, 540 A.2d 913 (App.Div. 1988) (counsel fees in matrimonial action).
The critical issue in this case is not whether the "doctrine of necessaries" should be applied to require a wife to pay for "necessaries" incurred by her husband, because we believe that principle has been established as the result of the holding of the Supreme Court in Jersey Shore, supra. Rather, the critical issue, as we see it, is whether the "doctrine of necessaries" applies to legal expenses incurred by defendant's husband. We conclude that a wife can be held liable for the legal expenses incurred by her husband, under the equal protection principles developed in Jersey Shore, when those legal expenses directly or indirectly are designed to preserve the assets of the marriage or to permit the party represented to continue his normal life, including the ability to make income and support the family either through employment or providing services or emotional well-being in the household. As the equal protection rationale developed in Jersey Shore does not apply to *185 legal expenses incurred prior to the marriage or after it no longer "subsists," 84 N.J. at 141, 417 A.2d 1003, we hold that the doctrine only applies to the expenses incurred during the marriage itself. Accordingly, we affirm that part of the trial judge's conclusion which relates to legal expenses prior to the marriage incident to the obtaining of custody by DeLarm of his children and of taking action to permit DeLarm to obtain a divorce so that he and defendant could marry.
However, the expenses incurred in connection with plaintiff's representation of DeLarm in the criminal, municipal court and DMV proceedings after the marriage are subject to payment by defendant under the "doctrine of necessaries".[5]
United States v. O'Neill, 478 F. Supp. 852 (E.D.Pa. 1979) held that legal representation provided by a federal public defender was subject to reimbursement by the criminal defendant's wife, to the extent of her financial ability. O'Neill was decided under Pennsylvania law and held that the wife was liable for the cost of providing for her husband's criminal representation so long as she could bear the financial burden. Under Pennsylvania law, the husband had a legal duty to support his wife, and the District Court reasoned that under the state's Equal Rights Amendment, the obligation had to be sex-neutral. Therefore, the court concluded "... a wife can be liable for the costs of necessaries provided to her husband so long as it is shown she is capable of bearing the financial burden." Id. at 854. The court further concluded that legal costs incurred by the husband *186 during the marriage were to be considered "necessaries for which the other spouse is liable". Ibid. According to the court, "[i]t is apparent that the costs of legal representation are just as important and necessary as the cost of medical expenses for which a spouse would be liable." Id. at 855.
Subsequently, in United States v. Conn, 645 F. Supp. 44 (E.D.Wis. 1986) the United States District Court for the Eastern District of Wisconsin held that a wife's assets could be used to pay for legal services provided by assigned counsel in a federal criminal prosecution in Wisconsin. Interpreting the provisions of the Federal Criminal Justice Act, 18 U.S.C.A. § 3006A(f), requiring reimbursement from funds "available for payment from or on behalf of a person furnished representation", the District Court noted the holding in O'Neill, under Pennsylvania law, that legal services were necessaries, and concluded:
When a person is charged with a crime for which incarceration may be a penalty, the necessity for an attorney may be as important as the services of a doctor if that spouse were ill. A person's liberty and freedom is a most cherished right. [citations omitted]. In Warner [and Ryan v. Heiden, 28 Wis. 517 (1871)] the Wisconsin Supreme Court `ruled that a husband could be held liable for attorney's fees incurred by his wife in the cause of defending against a criminal charge ... Such legal fees were viewed as necessaries for which the husband was responsible.' Sharpe Furniture Inc. v. Buckstaff, 99 Wis.2nd 114, 121, 299 N.W.2nd 219, 223 (1980). [645 F. Supp. at 45].
We hold that the "doctrine of necessaries" applies to the representation of a defendant with respect to indictable, non-indictable, and motor vehicle violations, where the family's support, income and well-being may be affected by incarceration, loss of driver's license or any other sentence of consequence. See Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971)[6]. We further hold that the doctrine applies only for services rendered during the marriage, and not prior thereto, even *187 though services may be rendered in order to permit a husband and wife to marry. Moreover, the doctrine applies only regarding legal expenses undertaken during the marriage and at least until the marriage irrevocably breaks down and the representation is no longer necessary to benefit the spouse. However, the mere separation of the parties cannot be undertaken to avoid financial responsibility by one spouse for the other's legal expenses. A complaint for divorce must be filed. Painter v. Painter, 65 N.J. 196, 217-218, 320 A.2d 484 (1974); Chalmers v. Chalmers, 65 N.J. 186, 192, 320 A.2d 478 (1974). While defendant and DeLarm were separated before this trial, the record does not reflect if a complaint for divorce was filed and, if so, at what point.
As issues must be further developed in connection with when expenses were undertaken and services were rendered, and as various questions remain for consideration, we remand for further proceedings consistent with this opinion.
NOTES
[1] Defendant's father worked for an out-of-State firm that had "a relationship with" plaintiff.
[2] A civil complaint was also filed for DeLarm and defendant as a result of another accident, but defendant was "stricken" therefrom because she and DeLarm were not married at the time of the accident. Apparently because of the prior accident, DeLarm had difficulty finding full time employment even before the July 1984 accident.
[3] However, the complaint filed in the Law Division did not "allege the giving of the notice required by" R. 1:20A-6, even though such notice was given. See R. 1:20A-6. See generally In re LiVolsi, 85 N.J. 576, 428 A.2d 1268 (1981).
[4] The trial judge repeated his finding after defendant testified.
[5] We do not hold that recovery is required. Various factual and legal issues must be explored, including the basis for determining any fees owed, and whether defendant has the means of payment. No fact finding was made on the latter issue although explored at trial. Further, we do not consider whether the doctrine applies to services rendered after marriage with respect to a retainer entered and partially performed before the marriage. We expressly decline to pass on any issue not raised before us, and decide only the general proposition considered as the basis for the judgment. Moreover, there are various facts concerning when services were rendered which must be developed.
[6] We recognize that a distinction might exist between cases involving convictions and acquittals because convictions reflect intentional wrongdoing or culpability for which the spouse should not be financially responsible. However, the cited cases do not make that distinction, and we do not address it in light of defendant's acquittal of all wrongdoing, but careless driving.