737 A.2d 189 (1999)
324 N.J. Super. 587
Kristi O. CLARK, n/k/a Kristi M. Olderich, Plaintiff,
v.
Robert J. CLARK, Defendant.
Superior Court of New Jersey, Chancery Division, Cape May County.
Decided January 20, 1999.
*190 Victoria T. Roach, Wildwood, for plaintiff.
Robert J. Clark, defendant pro se.
BATTEN, J.S.C.
In this post-divorce motion, this Court is asked to determine whether motor vehicle insurance surcharges authorized by N.J.S.A. 17:29A-35b(2) and assessed to a spouse prior to the filing of a complaint for divorce are marital debts which are properly subtracted from the total value of the marital estate prior to the equitable distribution of marital assets or, instead, nonmarital debts for which the non-assessed spouse bears no financial responsibility. There is no reported decision, in this or any other State, on point. The issue is one of first impression. The facts are not disputed.
The parties were married on November 13, 1993. A complaint for divorce was filed on September 16, 1998. The final judgment of divorce entered on November 19, 1998 incorporated a property settlement agreement which resolved all issues, including custody of the two (2) children born to the parties, visitation, support, and equitable distribution, with one (1) exception: responsibility for satisfaction of a judgment against plaintiff and in favor of the New Jersey Division of Motor Vehicles in amount of $2,835.01, representing unpaid insurance surcharges consequent to plaintiff's May 30, 1997 conviction for violation of N.J.S.A. 39:4-50, driving while intoxicated, and N.J.S.A. 39:4-129, leaving the scene of an accident. Specifically, plaintiff was surcharged by the State of New Jersey in amount of $1,000 per year for three (3) years for driving while intoxicated and $150 per year for three (3) years for leaving the scene of an accident. Monthly payments of $84 on the DWI surcharge and $25 on the leaving the scene surcharge were to commence June 13, 1997. Plaintiff attributes her failure to pay timely and satisfy this surcharge to the parties' financial circumstances throughout the marriage.
At the time of plaintiff's conviction, defendant was unemployed. Financial obligations of the marital household were satisfied, in part, by plaintiff's mother. Plaintiff was likewise unemployed at that time, remaining at home to care for the parties' children, then ages 2 and 3, and plaintiff's children from a prior marriage, then ages 9 and 10. In November 1997, defendant obtained employment with the County of Cape May as a security officer at the Crest Haven Office Complex. By this time, however, the parties had fallen delinquent in their financial obligations and insurance surcharge payments therefore were not paid.
The final judgment of divorce incorporating the property settlement agreement recognized the parties' disagreement over defendant's contribution to the satisfaction of the outstanding insurance surcharge and provided for one-half (½) of the judgment amount to be placed in escrow from the proceeds of sale of the marital home pending adjudication of this issue. Specifically, Article IV, subsection 4.1, addressing Asset and Liability Division states in pertinent part that:
4.1 ... the Husband does not agree to pay any part of Wife's Division of Motor Vehicles' judgment, said judgment totaling $2835.01 as of October 30, 1998. Therefore, one-half of said judgment as of October 30, 1998 is $1417.51 which amount shall be held in escrow by Victorian Abstract Agency for a period *191 of thirty (30) days. If Wife has not filed a motion with the Superior Court of New Jersey within thirty (30) days from October 30, 1998, said money shall be released to Husband ...
Plaintiff now moves for adjudication of defendant's obligation to contribute to the satisfaction of this surcharge debt, given its imposition during the course of the marriage, defendant's prior unemployment and consequent inability to support adequately the plaintiff and their children, and financial contributions to the marital household by plaintiff's mother during the period of the parties' unemployment.
In substance, plaintiff seeks judicial declaration that the insurance surcharge statutorily mandated consequent to her conviction for a quasi-criminal offense, violation of N.J.S.A. 39:4-50, is a marital debt properly subtracted from the total value of the marital estate prior to distribution, as opposed to a non-marital debt for which she is entirely responsible without offset or credit against her interests in the marital estate. Defendant does not deny, in the analysis of Rothman v. Rothman, 65 N.J. 219, 232, 320 A.2d 496 (1974), that (1) the debt was incurred by plaintiff prior to the filing of the complaint for divorce; (2) the quantum of the debt is fixed, specifically $2,835.01; and (3) adjudication of the debt as marital or, in the alternative, non-marital will bear consequence in form of either (A) shared and equal responsibility, in the case of the former, or (B) individual responsibility of the plaintiff to satisfy the debt in its entirety, in the case of the latter. Proper resolution of this issue requires far greater consideration, however, than determination that the debt was "... legally and beneficially acquired by them or either of them during the marriage". N.J.S.A. 2A:34-23. To the contrary, plaintiff's application begs analysis on several levels:
First, plaintiff seeks less the equitable distribution of an asset than the equitable allocation of a debt. While the statutory and decisional law concerning determination, valuation and distribution of marital assets is extensive, Rothman, supra; Painter v. Painter, 65 N.J. 196, 320 A.2d 484 (1974); Carlsen v. Carlsen, 72 N.J. 363, 368-369, 371 A.2d 8 (1977); Esposito v. Esposito, 158 N.J.Super. 285, 298, 385 A.2d 1266 (App.Div.1978); Brandenburg v. Brandenburg, 83 N.J. 198, 416 A.2d 327 (1980); N.J.S.A. 2A:34-23; N.J.S.A. 2A:34-23.1, there is a dearth of law on the fact-sensitive process of allocation of marital debts. Monte v. Monte, 212 N.J.Super. 557, 566, 515 A.2d 1233 (App.Div.1986). In certain instances, marital debts have been deducted from the total value of the estate, Pascarella v. Pascarella, 165 N.J.Super. 558, 563, 398 A.2d 921 (App.Div.1979) (the trial court should have deducted from the total value of the marital estate a $33,000 debt incurred by husband, from his mother, during the marriage), or the debts have been allocated separately to reduce monetary award payments. Ionno v. Ionno, 148 N.J.Super. 259, 262, 372 A.2d 624 (App.Div.1977) (debt should be allocated between the husband and wife by the trial court). Except in those cases wherein the quantum of all liabilities exceeds the value of all assets, the two methods of allocation of debts concededly marital typically yield the same or similar result.[1] Here, the contested surcharge is also arguably marital in the sense of its assessment to plaintiff during the marriage and prior to the filing of the complaint. It is a debt, however, from which defendant claims exemption from responsibility.
Second, the surcharge is a civil penalty assessed by the New Jersey Division of Motor Vehicles against the plaintiff. N.J.S.A. 17:29A-35b(2). It is, to this extent, *192 a debt owed directly by plaintiff to a third party. The debt does not represent unsatisfied consideration for goods or services rendered to a spouse through contractual agreement or relationship but, instead, a statutorily mandated insurance surcharge consequent to a spouse's conviction for violations of N.J.S.A. 39:4-50 and N.J.S.A. 39:4-126, quasi-criminal offenses, for which neither statute nor reported decisions impute vicarious liability to an innocent spouse. Lacking any legal basis for imputation of liability to anyone other than the guilty offender, likewise there exists no basis for imputation of liability to anyone else for payment of the civil penalty imposed by the state pursuant to that quasicriminal conviction. Indeed, our Supreme Court, per Chief Justice Weintraub, has observed, on the issue of criminal liability, that:
It is basic in our thinking (except for certain statutory offenses) that for criminal liability there must be "concurrence of an evil-meaning mind with an evildoing hand ..." Morissette v. U.S., 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952). State v. Williams, 29 N.J. 27, 41, 148 A.2d 22 (1959).
Here, plaintiff seeks to visit upon her spouse the obligation to satisfy all or some portion of a penalty imposed by the State consequent entirely to her own unlawful conduct. There is neither showing nor the slightest allegation that defendant possessed either "evil-meaning mind" or "evildoing hand" to any degree. This record also lacks any allegation that defendant either actually knew or otherwise had reason to know of (1) plaintiff's intention to operate or (2) her actual operation of the motor vehicle while under the influence of an alcoholic beverage; nor, for example, does this record support a finding that defendant actually knew or had reason to know of any propensity by plaintiff to consume alcoholic beverages to an excessive degree proximately prior to operating a motor vehicle. Absent such facts, there is virtually no nexus for attribution of complicity for plaintiff's conviction to defendant. A fortiori, defendant is notcannot beliable for plaintiff's surcharge assessed consequent to that conviction. Morissette v. U.S., supra; State v. Williams, supra.
Third, there is no suggestion that the operation of a motor vehicle by plaintiff while under the influence of an alcoholic beverage was somehow related to the marital enterprise, and through which the defendant or the marital estate enjoyed benefit to a degree for which imposition of civil liability now might reasonably be considered pursuant to the "doctrine of necessaries" as pronounced by our Supreme Court in Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003 (1980). There, a provider of medical services brought an action against a decedent's widow for payment of medical expenses incurred in connection with the decedent's last illness. In Jersey Shore, Justice Pollack discussed the history and interpretation of the common law, the Married Women's Act, N.J.S.A. 37:2-15, and evolving doctrines of equal protection and equal rights for women, concluding, inter alia, that "[n]either equity nor reality justifies imposing unqualified liability on one spouse for the debts of the other or exempting one spouse from liability for the necessary expenses of the other." 84 N.J. at 149, 417 A.2d 1003. The court declared:
... that the common law rule must yield to the evolving interdependence of married men and women and to the reality that a marriage is a partnership. Consequently,... both spouses are liable for necessary expenses incurred by either spouse in the course of a marriage.... however, a judgment creditor must first seek satisfaction from the income and other property of the spouse who incurred the debt. If those financial resources are insufficient, the creditor may then seek satisfaction from the income and property of the other spouse. 84 N.J. at 141, 417 A.2d 1003. [Emphasis added.] *193 Our Supreme Court carved a practical and equitable approach with respect to the relationship of the spouses and their mutual relationship to creditors, stating:
"... both spouses are liable for necessary expenses incurred by either spouse. In a viable marriage, marital partners may decide among themselves how to pay their debts. A creditor providing necessaries to one spouse can assume that the financial resources of both spouses are available for payment. However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient .... the reasonable expectations of marital partners are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse. However, it would be unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses. In the absence of such an agreement, a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient. Marshaling the marital resources in that manner grants some protection to a spouse who has not expressly consented to that debt." Id. at 151, 417 A.2d 1003. [Emphasis added].
Our Appellate Division later expanded this doctrine to include legal expenses incurred by the other spouse with the direct or indirect purpose to preserve the assets of the marriage or to permit the party represented to continue a normal life, including the ability to earn income and support the family either through employment or providing services or emotional well-being in the household. DuBois v. DeLarm, 243 N.J.Super. 175, 184, 578 A.2d 1250 (App. Div.1990). Noting the holdings of U.S. v. O'Neill, 478 F.Supp. 852 (E.D.Pa.1979) (legal representation provided by federal public defender was subject to reimbursement by the criminal defendant's wife to the extent of her financial ability), U.S. v. Conn. 645 F.Supp. 44 (E.D.Wis.1986) (a wife's assets could be used to pay for legal services provided by assigned counsel in a federal criminal prosecution in Wisconsin) and Jersey Shore, supra, the DuBois court held that the doctrine of necessaries applies to the representation of a defendant with respect to indictable, non-indictable, and motor vehicle violations, where the family's support, income and well-being may be affected by incarceration, loss of driver's license or any other sentence of consequence.
Here, however, the issue is not the contingent financial responsibility of (1) a surviving spouse for satisfaction of necessary expenses incurred through medical treatment of a deceased spouse, as in Jersey Shore, or (2) the non-represented spouse for legal expenses incurred by the other spouse while defending a criminal, quasicriminal or any other proceeding the result of which might subject the defending spouseand, through that spouse, the marital enterpriseto a consequence of magnitude, as in DuBois. On the contrary, the issue here is payment of a civil penalty administratively assessed against plaintiff subsequent to adjudication of guilt for certain motor vehicle offenses. This expense is not "necessary" as considered in Jersey Shore, supra, nor does the surcharge subject plaintiff to incarceration, loss of driving privileges or other consequence of magnitude to such degree as might affect the support, income, or wellbeing these parties individually or their children, assuming timely payment. Demonstrated inability to pay might warrant imposition of some responsibility to pay all or some portion of plaintiff's surcharge upon defendant. This record contains no such showing by plaintiff, however. In fact, both the property settlement agreement and escrow documentation establish *194 plaintiff's ability to satisfy the surcharge in its entirety and without need or other basis for contribution by defendant.
Fourth, the assessment of the surcharge against plaintiff prior to the date on which the divorce complaint was filed does not necessarily render the obligation "marital". Several considerations pertain. For example, the DuBois court noted the potential distinction between cases of conviction and cases of acquittal, observing that the former typically reflect wrong-doing or culpability for which the innocent spouse ought not be responsible.[2] In Monte, supra, the trial court concluded that the extent of wife's liability for pre-complaint, third party loans to husband was a function of wife's knowledge of the loans, participation in the encumbrances and shared enjoyment of the benefits derived therefrom. Finding (1) lack of actual notice or even factual circumstances which reasonably would have reposed in wife the duty to make inquiry about these loans and (2) attribution of loan proceeds to husband's business, the court deemed the obligations non-marital. The Appellate Division, affirming the trial court, noted "judicial authority" for such analysis. Id. at 567, 515 A.2d 1233.
Characterization of debts as "marital" or "non-marital" is fact-sensitive andonce madefinal. Mahoney v. Mahoney, 91 N.J. 488, 498, 453 A.2d 527 (1982). One appellate court has distinguished between "marital" debts, directly traceable to the acquisition of marital property, and "non-marital" debts, which are not. Schweizer v. Schweizer, 301 Md. 626, 484 A.2d 267 (1984). If marital, the debts are subtracted from the total value of the marital property before distribution. If non-marital, they are taken into account as a reflection of the party's economic circumstances when the court determines the amount and method of payment of the award. Id. at 637, 484 A.2d at 272. Indeed, debts deemed marital may nonetheless be allocated to one party based upon his or her greater earning potential. Painter v. Painter, 65 N.J. 196, 211, 320 A.2d 484 (1974). Facts may even support equal division of assets yet unequal allocation of debts. Levy v. Levy, 277 S.C. 576, 291 S.E.2d 201 (1982).
Where a debt is challenged as non-marital, the owing party bears the burden to show that the debt is traceable to a marital asset. Sharp v. Sharp, 58 Md.App. 386, 398, 473 A.2d 499 (1984). Intentional dissipation of a marital asset is "no more than a fraud on marital rights" and a debt thereby incurred will not be charged to the unknowing spouse. Ibid. See Klingberg v. Klingberg, 68 Ill.App. 3d 513, 25 Ill.Dec.246, 386 N.E.2d 517 (1979) (dissipation found where husband used marital property for his own benefit for a purpose unrelated to the marriage at a time when the marriage was breaking down); In re Marriage of Sevon, 117 Ill. App.3d 313, 73 Ill.Dec. 41, 453 N.E.2d 866 (1983) (no dissipation where no evidence in record to indicate that wife spent the money for purposes unrelated to the marriage). Courts predicate these decisions upon the reasons for which debts were incurred and the manner in which the funds thus generated were spent; knowledge or awareness of the "victim" spouse concerning the debts is neither determinative nor emphasized.
Post-Monte decisions in other jurisdictions likewise support this analysis. In Mann v. Mann, 1996 WL 265230 (Va. App.), the Virginia Court of Appeals affirmed the trial court's order that a wife pay one-half (½) of the husband's outstanding tax liability, given shared benefits through the proceeds of the indebtedness. In Cunningham v. Cunningham, 1996 WL 409208 (Va.App.), the Virginia Court of Appeals upheld the trial court's determination that a spouse who neither created the *195 tax liability nor generated income should not be held liable for a late filing penalty. Finally, in MacKay v. MacKay, 146 Wis.2d 866, 431 N.W.2d 327 (Wis.App. 1988), 1988 WL 112276, the Wisconsin Court of Appeals upheld the trial court's inclusion of the wife's drunk driving fines as marital debts. The Appellate Division there affirmed the trial court's discretion to include fines and penalties in the marital liabilities, noting, importantly, that "the record does not show that [husband] sought exclusion of the fine in the trial court." Id. Indeed, depletion of the marital estate to the extent of wife's $815 drunk driving fine was offset by the trial court's imposition of a $92,000 ninety (90) day deferred payment by husband, to wife, for the property division. Husband's greater financial position and wife's need for assistance affected the trial court decision.[3] Here, of course, defendant affirmatively seeks exclusion of the insurance surcharge from the marital estate at the trial level. Further, the property settlement agreement accords to each party one-half of the net value of the marital estate. As a result, neither party enjoys economic advantage similar to the type enjoyed by the wife in McKay, supra.
These parties suffer no demonstrated economic disparity in their respective circumstances as might support the characterization of the insurance surcharge as a marital debt. Certainly, plaintiff, as the assessed spouse, has failed to carry her burden that the debt is traceable to a marital asset; Sharp, supra. Defendant did not create the liability, Cunningham, supra; nor did he or the marital enterprise derive any benefit from the debt; Mann, supra. The surcharge bears no relationship to anything "necessary"; Jersey Shore, supra. Neither party stands to suffer a consequence of magnitude through non-payment given the net proceeds from sale of the marital home. DuBois, supra. Plaintiff's present ability to pay thus renders unfair the imposition of vicarious liability upon an innocent spouse lacking both "evil-meaning mind" and "evil doing hand". Morissette, supra at 251, 72 S.Ct. 240. The parties' agreement on all other issues affords no basis for any other relief.
The insurance surcharge is therefore a non-marital debt for which defendant owes no duty of contribution to the plaintiff. This issue thus resolved, the parties are left to the terms of their property settlement agreement, Painter, supra, Schweizer, supra, Monte, supra, including release of all escrowed funds unto defendant.
NOTES
[1] Subsection 4.1 of Article IV of the property settlement agreement mandates (A) the escrow of fifty (50%) percent of the total judgment from the net proceeds of sale of the marital home and (B) release of the balance of net proceeds to the parties equally. This language, considered in the context of the entire agreement, suggests clearly that the value of marital assets exceeds the aggregate of marital liabilities.
[2] Cases cited by the appellate court in DuBois, supra, fail to make such distinction. The court there declined further comment on this distinction given the defendant's acquittal of all wrong-doing but for the careless driving conviction.
[3] The Appellate Division there noted husband's "greater monetary contribution to the marriage ... [and] earning power greatly exceed[ing] wife's ... [wife's lack of] high paying work skills and ... little likelihood of ever matching [husband's] earning power." Id. at 867, 431 N.W.2d 327.