**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4429-13T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

A.L.[1],

      Defendant.

_____

| **APPROVED FOR PUBLICATION** |
| :---: |
| **May 18, 2015** |
| **APPELLATE DIVISION** |

Argued: April 28, 2015 — Decided: May 18, 2015

Before Judges Reisner, Haas and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Somerset County, Indictment
No. 10-12-0770.

Remi L. Spencer argued the cause for
appellant M.B. (Spencer & Associates, LLC,
attorneys; Ms. Spencer, on the briefs).

Matthew Murphy, Assistant Prosecutor, argued
the cause for respondent State of New Jersey
(Geoffrey D. Soriano, Somerset County
Prosecutor, attorney; Mr. Murphy, of counsel
and on the briefs).

Jenny M. Hsu, Deputy Attorney General,
argued the cause for amicus curiae Attorney
General (John J. Hoffman, Acting Attorney

---

[1] We use initials for the relevant parties, A.L. and M.B., and
have impounded the record to protect their privacy and safeguard
confidential information, pending further proceedings in this
matter.  As indicated in this opinion, any hearing in this case
should have been conducted in camera, and the prosecutor's
office should not have publicly disseminated the parties'
financial information during the court's investigation.

General, attorney; Ms. Hsu, of counsel and on the brief).

Matthew Astore, Deputy Public Defender, argued the cause for amicus curiae Public Defender (Joseph E. Krakora, Public Defender, attorney; Mr. Astore, of counsel and on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

In this case of first impression, we determine the procedures that should be used to review the indigency status of a defendant who has been convicted of a crime and who requests the services of the Office of the Public Defender (OPD) to file an appeal on her behalf. During the pendency of defendant's appeal from her conviction, the State filed a motion with the trial court, rather than this court, seeking to prohibit the OPD from continuing to represent defendant in the appeal based upon its assertion that defendant was not indigent. We conclude that, pursuant to the clear language of Rule 2:9-1(a), this motion should have been filed with the Appellate Division in the first instance.

I.

In order to place the factual issues raised in this matter in their proper context, we begin with a review of the law in this area.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his [or her] defen[s]e."  "The Amendment guarantees the right of a criminal defendant to retain counsel of his [or her] choice, to the effective assistance of counsel, and if indigent and facing the potential loss of 'life or liberty,' to have counsel appointed at the government's expense." State v. Western World, Inc., ___ N.J. Super. ___ (App. Div. 2015) (slip op. at 11) (citations omitted).

As our Supreme Court recently explained in In re Custodian of Records, Criminal Division Manager, 214 N.J. 147, 158 (2013), New Jersey "has a long history of publicly funded representation of indigent defendants." (citations omitted).  In 1967, the Legislature enacted the Public Defender Act, which created the OPD.  N.J.S.A. 2A:158A-1 to -25.  "The [OPD] represents all indigent defendants charged with an indictable offense. N.J.S.A. 2A:158A-5.  The statute defines an indigent defendant as one 'who does not have the present financial ability to secure competent legal representation.'  N.J.S.A. 2A:158A-2." In re Custodian of Records, supra, 214 N.J. at 159.

The OPD provides legal services to indigent defendants both at trial and on appeal.  Western World, supra, (slip op. at 11).

At the trial level, judges are required to advise a defendant of his or her right to representation by the OPD at the time of the defendant's first appearance before the court. R. 3:4-2(b)(3). "[I]f the defendant asserts indigence," the judge must "assure that the defendant completes the appropriate application form for [OPD] services and files it with the [C]riminal [D]ivision [M]anager's office[.]" R. 3:4-2(b)(5).

"To determine whether a defendant qualifies for a public defender, a court staff member collects information about a defendant's financial status. That information is then collected on the third page of an intake form, known as the Uniform Defendant Intake Report (UDIR)." In re Custodian of Records, supra, 214 N.J. at 151. The third page of the UDIR is known as "the 5A Form." Id. at 160. On this form, "the defendant provides employment and financial information and indicates whether he or she requests representation by" the OPD. Ibid. The 5A Form does not require a defendant to provide any financial information concerning his or her spouse or any other immediate family members.

"The defendant must certify the accuracy of the financial data set forth on the form." Id. at 151. Prior to the Court's May 14, 2013 decision in In re Custodian of Records, supra, the information the defendant provided in a 5A Form was "prohibited

from use in grand jury proceedings and at trial, even for the purposes of cross-examination[,]" but could "be used at sentencing unless the defendant object[ed]." Id. at 161.

The Criminal Division Manager's office is charged with the responsibility of reviewing a defendant's 5A Form and assessing the defendant's claim of indigency. R. 3:8-3. In making the indigency determination, the Manager considers the factors set forth in N.J.S.A. 2A:158A-14. In pertinent part, this statute states:

> Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the defendant. Need shall be measured according to:
>
> a. The financial ability of the defendant to engage and compensate competent private counsel;
>
> b. The current employment, salary and income of the defendant including prospects for continued employment if admitted to bail;
>
> c. The liquid assets of the defendant, including all real and personal property and bank accounts;
>
> d. The ability of the defendant to make bail and the source of bail posted;
>
> e. Where appropriate the willingness and ability of the defendant's immediate family, friends or employer to assist the defendant in meeting defense costs;
>
> f. Where appropriate an assessment of the probable and reasonable costs of providing a

A-4429-13T2

private defense, based upon the status of the defendant, the nature and extent of the charges and the likely issues;

g. Where appropriate, the ability of the defendant to demonstrate convincingly that he has consulted at least three private attorneys, none of whom would accept the case for a fee within his ability to pay; and

h. The ability of the defendant to provide all other necessary expenses of representation.

[N.J.S.A. 2A:158A-14.]

If the Manager "determines that a defendant seeking the services of [the OPD] is indigent, he or she is referred to the [OPD] no later than the pre-arraignment conference. R. 3:8-3, 3:9-1(a)." In re Custodian of Records, supra, 214 N.J. at 160 n.2.

If the criminal proceeding results in a conviction, either following a trial or a plea, the defendant completes a new 5A Form that becomes part of the presentence report that is relied upon by the judge, the prosecutor, and the public defender at the sentencing hearing. Id. at 157. At sentencing, the judge must "advise the defendant of the right to appeal and, if the defendant is indigent, of the right to appeal as an indigent." R. 3:21-4(h). The 5A Form provided with the presentence report then becomes the defendant's application for OPD services on appeal. The Criminal Division Manager reviews the 5A Form and advises the OPD whether the defendant is indigent. If so, the

OPD undertakes the defendant's representation and files a notice of appeal to the Appellate Division, or provides representation in the event of an appeal filed by the State.

"A determination to grant or deny the services of the [OPD] shall be subject to final review by the Assignment Judge or his [or her] designated judge." N.J.S.A. 2A:158A-15.1. In cases where the Criminal Division Manager determines that the defendant is not indigent, review by the Assignment Judge will usually occur before the OPD becomes involved in the case. However, if "a determination of eligibility cannot be made before the time when the first services are to be rendered, or if an initial determination is found to be erroneous," the OPD shall represent the defendant on a provisional basis. N.J.S.A. 2A:158A-14. If the defendant is subsequently determined to be ineligible, "the defendant shall . . . be obliged to engage his [or her] own counsel and to reimburse the [OPD] for the cost of the services rendered to that time." Ibid.

In addition, "[t]he reasonable value of the services rendered to a defendant" by the OPD "may in all cases be a lien on any and all property to which the defendant shall have or acquire an interest." N.J.S.A. 2A:158A-17a. The OPD must "effectuate such lien whenever the reasonable value of the services rendered to a defendant appears to exceed $150 . . . ."

Ibid. In its amicus brief, the OPD represented that liens are filed in every case where it provides legal services to an indigent client.

In In re Custodian of Records, the Court dealt with the situation where the State believed a defendant who had been found eligible for OPD services prior to his arraignment was not truly indigent. Supra, 214 N.J. at 153-54. The defendant had been indicted on a number of offenses, including first-degree money laundering, N.J.S.A. 2C:21-25; first-degree racketeering, N.J.S.A. 2C:41-2; and third-degree promoting gambling, N.J.S.A. 2C:37-2. Id. at 153. During its investigation of these offenses, the State "had obtained documents . . . that suggested [the] defendant owned substantial assets." Id. at 154.

The State issued a trial subpoena seeking to obtain a copy of the 5A Form used to determine defendant's indigency for the trial proceedings. Ibid. "[T]he State proffered that it sought the documents to investigate whether [the] defendant fraudulently represented his assets to obtain public defender representation" and, if so, "to prosecute him for fraud[.]" Id. at 155, 157. The State represented that it would not use the information in defendant's 5A Form "as evidence in his current criminal matter[.]" Id. at 157. In addition, the State asserted that it needed the form in order "to apply to the court

A-4429-13T2

for termination of [the] defendant's court-appointed counsel[.]" Id. at 163.

In In re Custodian of Records, the Court held that the "discovery sought by the State [was] not essential to the court's review of the State's challenge to defendant's indigency status." Ibid. Nor was a formal motion necessary to initiate a review. Instead, the Court observed that the State "or any other person or entity" could simply present "any evidence that bears on [the] defendant's qualification for public defender representation" to the Assignment Judge. Id. at 164 n.4. The Assignment Judge would then conduct an investigation by reviewing the defendant's 5A Form, and "'obtain[ing] information from any public record office of the State or of any subdivision thereof on request and without payment of the fees ordinarily required by law.'" Id. at 164 (quoting N.J.S.A. 2A:158A-15.1).

Once this information was assembled, the Court noted that the Assignment Judge would "compare [the] defendant's disclosure on the form with other financial data made available to the court in connection with the application, and determine whether [the] defendant is legitimately entitled to publicly financed legal assistance." Ibid. The Court stated that, where the documents are "uncomplicated, the Assignment Judge may analyze them in camera without the assistance of counsel or experts."

Ibid. Following this review, "[i]f the Assignment Judge finds that [the] defendant did not qualify for appointed counsel, he [or she] may terminate the appointment." Id. at 166 (citations omitted).

The Court stated that challenges to an indigency determination should be made "at an early court appearance[.]" Id. at 171. The reason for requiring a prompt resolution of any issue regarding a defendant's indigency is clear. OPD representation is critical to the fair and efficient functioning of the criminal court system and, therefore, objections to OPD representation must be raised at the earliest possible time to avoid disruption of criminal trials and appeals.

With regard to the State's claim that it needed the 5A Form to determine whether to prosecute the defendant "for a fraudulent financial disclosure[,]" the Court ruled that the State could not obtain the form through a trial subpoena. Id. at 165. Because the defendant was advised at the time he completed the form that it "would not be used in a grand jury proceeding or at trial[,]" the Court held that the form could not be used by the State "to prosecute him for false swearing or fraud[.]" Id. at 165-66.

Thus, the Court directed that the 5A Form be modified to advise future defendants that: "'At the direction of the

Assignment Judge acting on his or her own initiative, or in response to a valid grand jury subpoena with the approval of the Assignment Judge, [the 5A Form] may be produced to a grand jury and a prosecutor.'" Id. at 167-8. The Court also ruled that "if prosecutors seek to preserve the option to subpoena the financial and employment information that defendants supply on the" 5A Form, they must first ask the trial court "at an early court appearance attended by court-appointed counsel" to require the defendant to "affirm" that: the information on the form is true; he or she "understands that willfully false statements on the form . . . may subject him or her to punishment"; and "the defendant understands that information about finances and employment may be disclosed to a grand jury and the prosecution." Id. at 168. The court must also give the defendant the opportunity to revise his or her 5A form after this inquiry is made.[2] Ibid.

The Court also confirmed that the information disclosed by a defendant on the 5A Form "should not be used by the prosecution to prove the pending case, even if the defendant's finances are relevant to the pending charges." Ibid. Significantly, the Court cautioned that, in order

_____

[2] On May 29, 2013, the Administrative Office of the Courts promulgated Administrative Directive 03-13 setting forth these new requirements.

> [t]o protect against the use of information provided by defendants in the pending trial, and to guard against improper accusations of abuse, a separate team of prosecutors and investigators -- who are not involved with the pending case -- should be assigned to any new investigation relative to the contents of the [5A] [F]orm."
>
> [Id. at 168-69.]

Finally, the Court directed prosecutors seeking disclosure of the "financial data in" 5A Forms to "proceed by way of a grand jury subpoena, not a trial subpoena . . . ." Id. at 169. These "grand jury subpoenas should be presented to the Criminal Division Manager and the Assignment Judge along with an accompanying affidavit from the prosecutor that details the basis for the subpoena -- a showing that the intake form contains false information." Id. at 170. The Assignment Judge would then "determine, within his or her discretion, whether the State's proofs justify disclosure of the" 5A Form. Ibid. The Court stated that it "expect[ed] that it will be the rare case in which the State presents sufficient proof of fraud to warrant disclosure." Ibid.

While the Court's decision applied only to criminal matters pending at the trial level, we believe that most, but not all, of the principles established also apply when a judgment of conviction has been appealed to this court. As noted above, the defendant's 5A Form is included as part of the presentence

report and is used to determine the defendant's eligibility for OPD representation on appeal. Thus, the Criminal Division Manager's review of the application, and any analysis required by the Assignment Judge, will ordinarily occur before the appeal is filed and, therefore, before we acquire jurisdiction of the matter.

However, once a notice of appeal has been filed, "the supervision and control of the proceedings on appeal . . . shall be in the [A]ppellate [Division] from the time the appeal is taken . . . ." R. 2:9-1(a). Thus, requests to disqualify the OPD, filed after an appeal has been docketed, must be presented to us in the first instance. Ibid.

In cases where the State makes an early request for an indigency review as required by In re Custodian of Records, supra, we anticipate that we would usually order a limited remand to the Assignment Judge to consider the factual issue of the defendant's indigency, while retaining jurisdiction to make the decision as to whether the OPD should be disqualified from representing the defendant on appeal. See State v. Hoque, 175 N.J. 578, 583 (2003) (granting a limited remand pending appeal "when consideration of a particular issue by the trial court will enable full resolution of the controversy by the appellate court or is necessary to deal with an essential matter

implicating the issues on appeal arising after the notice of appeal is filed") (citation and internal quotation marks omitted).

However, where the matter has proceeded sufficiently far in the appellate process that an indigency review and the potential disqualification of a defendant's public defender would seriously disrupt the appeal and impermissibly infringe upon the defendant's right to counsel, a different approach is required. As we will now discuss, that is the situation presented in the case at hand.

## II.

On November 27, 2012, a jury convicted defendant A.L. of second-degree vehicular homicide, N.J.S.A. 2C:11-5a; and third-degree assault by auto, N.J.S.A. 2C:12-1c(2). During the lengthy trial, defendant had been represented by private counsel. Sentencing was scheduled for February 14, 2013.

On January 29, 2013, the OPD advised the Criminal Division Manager that defendant had requested that a public defender represent her on appeal. The OPD asked the Manager to determine whether defendant was indigent.

In preparation for the sentencing, Criminal Division staff prepared a presentence report, which included a copy of defendant's 5A Form. This form was not signed or dated by

A-4429-13T2

defendant. A notation at the bottom of the form indicates that it was printed on January 30, 2013, together with the rest of the presentence report. According to the brief it filed with the Assignment Judge in support of its motion to disqualify defendant's appellate counsel, the prosecutor's office received the presentence report and defendant's 5A Form on that same date. A copy of this form also appears in the appendix to the State's motion brief.

On February 5, 2013, the Criminal Division Manager advised the OPD that "Defendant is Public Def. accepted" and enclosed a copy of defendant's 5A Form. This form, which was signed and dated by defendant on February 5, 2013, had some additional information handwritten on it, such as defendant's middle name, and a minor addition to her "financial status" information. Otherwise, it was identical to the January 30, 2013 form. The February 5, 2013 5A Form was appended to the presentence report filed in the appeal concerning defendant's conviction and sentence. Therefore, we assume it was also available to the judge, the prosecutor, and defendant's trial attorney at sentencing.

Because defendant completed her January 30, and February 5, 2013 5A Forms prior to the Supreme Court's decision in In re Custodian of Records, supra, neither form warned her that the

forms could be turned over to a grand jury or the prosecutor during an investigation of her eligibility for OPD services.

On February 14, 2013, the trial judge sentenced defendant to three years in prison on count one, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and three years of parole supervision upon her release. The judge imposed a concurrent three-year term on count two.

On February 20, 2013, the State filed a notice of appeal challenging the sentence imposed by the trial judge. On February 28, 2013, the OPD filed an appeal on defendant's behalf, challenging her conviction and sentence. On March 6, 2013, our clerk's office designated defendant as the appellant and the State as the cross-appellant for purposes of the briefing schedule.

The assistant prosecutor, who represented the State during defendant's trial and at sentencing, learned that the OPD was representing defendant on appeal on March 6, 2013. According to the prosecutor's brief, "[t]he State had always known the defendant was not indigent[.]" Nevertheless, the prosecutor did not immediately take any action to contest the determination that defendant was indigent and, therefore, eligible for OPD representation.

On May 14, 2013, the Supreme Court issued its decision in In re Custodian of Records, supra. The prosecutor advises that he became aware of this decision shortly after it was rendered, but he still did not take any action to contest defendant's indigency.

Sometime "[d]uring the underlying litigation," and the State has not specified when this occurred, the prosecutor obtained a court order requiring a newspaper internet website to disclose the identity of an individual who had posted comments "boast[ing] that the defendant's appeal would be handled by the Public Defender." The State asserts that M.B. posted these comments.

Over the course of the year following the filing of the parties' appeals, the OPD worked on defendant's case. It filed forty-seven transcripts, totaling more than 6200 pages. Pursuant to the last of a series of scheduling orders, the OPD's brief was due to be filed on January 24, 2014. On January 10, 2014, defendant's public defender asked for a short extension of time to file the brief. The OPD submitted defendant's appellate brief on March 19, 2014, together with a motion seeking permission to file an overlength brief. We granted that motion on April 11, 2014.

Sometime during the period between the Court's decision in In re Custodian of Records, supra, and March 4, 2014, the same prosecutor who had represented the State at trial, issued grand jury subpoenas seeking defendant and her husband M.B.'s financial records.[3] Through the use of these subpoenas, the State obtained M.B.'s savings and checking account records and his vehicle registration records. It also obtained life insurance information for both defendant and M.B.[4]

On March 4, 2014, thirteen months after the OPD assumed defendant's representation for her appeal, the State filed[5] a motion with the Assignment Judge seeking "an Order terminating the [OPD] from further representation of defendant . . . ." The motion also asked that defendant be ordered to appear in court

_____

[3] The subpoenas are not part of the record on appeal and, therefore, we do not know exactly when the State issued them.

[4] In response to our request for supplemental briefs addressing certain issues pertinent to this appeal, the State advised us that it issued the grand jury subpoenas because it was investigating whether defendant could be prosecuted for theft in connection with the legal services she was receiving from the OPD. However, at the trial level, the State told the Assignment Judge that, because defendant had executed her 5A Form prior to the Supreme Court's decision in In re Custodian of Records, supra, defendant "is effectively immune from criminal prosecution even if her [5A Form] contains fraudulent misrepresentations."

[5] The assistant prosecutor who represented the State at the trial, and who had obtained the grand jury subpoenas, also filed this motion on the State's behalf.

to confirm that the information supplied on her 5A Form was "true" and to be advised that "wil[l]fully false statements" on the form could subject her to punishment.

In support of its motion, the State submitted a sealed appendix containing the financial records it had obtained from the grand jury. Notably, all of the bank and vehicle registration records were solely in M.B.'s name. The State produced no information indicating that defendant had any income or assets, other than a life insurance policy that appeared to have no cash value. Perhaps because of this, the State also sought an order requiring that defendant provide the Assignment Judge with four years of tax returns, and other financial records relating to any stocks, bonds, or other assets defendant might own. The State also asked the Assignment Judge to order "defendant to produce copies of any legal document(s), executed between 2010 and 2013, that involved, touched upon or had the effect of altering family assets and/or property rights of either [defendant] or [M.B.]"

The State acknowledged that defendant's name did "not appear on any of the marital assets nor the real and personal property belonging to the" family. Nevertheless, the State asserted that defendant was not indigent because M.B. was employed, had substantial funds in his savings and checking

accounts, and owned the parties' house and cars. Thus, the State argued that M.B. was required to pay for defendant's legal representation.

As noted above, the State filed M.B.'s financial documents in a sealed appendix. However, it did not seal its notice of motion or its motion brief. In its motion brief, the State made numerous references to M.B.'s financial information, including his savings account balances at various times. The State identified M.B.'s employer, how often he was paid, and how his payroll checks were deposited. The State also disclosed dozens of specific payments M.B. had made for his family's educational, medical, and personal expenses, including the names of the medical offices, educational facilities, and vendors receiving these payments. The death benefit amounts of defendant's and M.B.'s life insurance policies were also revealed. Thus, the State made all of this sensitive information, which it had obtained through a grand jury subpoena, available to the public.

As set forth in Rule 2:9-1(a), the trial court did not have jurisdiction to entertain any motions in this matter because of the pending appeal. However, the State did not file a motion with the Appellate Division seeking a limited remand.

The OPD filed a letter brief under seal on behalf of defendant opposing the State's request to terminate its

representation of defendant on appeal. The prosecutor objected to the OPD's "appearance . . . in adversarial opposition to the inquiry," arguing that "the State reasonably expected the Public Defender to take 'no position' on the merits or otherwise appear amicus curiae."

Although the State had revealed M.B.'s personal financial information in its motion brief, and sought his financial records, the State did not serve M.B. with a copy of its motion papers, and he was not made a party to the State's motion. However, the judge asked M.B. to supply an affidavit stating whether he was willing to contribute to defendant's legal expenses. In making this request, the judge relied upon N.J.S.A. 2A:158A-14e, which states that "[w]here appropriate[,]" a defendant's need for OPD services shall be measured, in part, on "the willingness and ability of the defendant's immediate family, friends or employer to assist the defendant in meeting defense costs[.]" (Emphasis added).

M.B. retained an attorney to represent him in connection with this request. On March 25, 2014, the attorney provided M.B.'s affidavit, in which he stated, "I am unwilling to fund the legal representation of my wife following her conviction at trial and sentencing by the [c]ourt."

On April 8, 2014, the judge conducted oral argument in open court on the State's motion to prohibit the OPD from representing defendant in the pending appeal. At the beginning of the argument, defendant's attorney asked that the proceedings be conducted in camera. In response, the prosecutor stated, "I didn't think I was going to say anything that would have raised any privacy issues[,] but I have no objection." However, the judge responded, "At this juncture, . . . I am unsure that we really need to ask the public to leave the courtroom. I'd like to hear argument. If I feel that we are bordering on something that is of a confidential nature, I will reconsider [the] application[.]"

Contrary to his earlier statement, the prosecutor then proceeded to highlight the specific financial information obtained from M.B.'s bank, vehicle, and life insurance records. In response, defendant's attorney pointed out that the State had not "submitted anything to the court that would suggest that [defendant] has a single asset other than what she put on her [5A Form] in 2013 and that is what your Honor is entitled to compare."

22                                                    A-4429-13T2

On April 10, 2014,[6] the judge issued a written decision, finding that she could consider M.B.'s assets in determining whether defendant was indigent and, therefore, qualified for OPD representation. In so ruling, the judge primarily relied upon DuBois, Sheehan, Hamilton, and DuBois v. DeLarm, 243 N.J. Super. 175 (App. Div. 1990). In that case, we applied the common law "doctrine of necessities" in finding that one spouse could be held liable for the legal expenses incurred by the other spouse in a criminal action in which the spouse was acquitted. Id. at 182. However, we specifically noted "that a distinction might exist between cases involving convictions and [those involving] acquittals because convictions reflect intentional wrongdoing or culpability for which the spouse [from which payment is sought] should not be financially responsible." Id. at 186 n.6.

Here, defendant was convicted following her trial, and M.B. had advised the judge that he was not willing to pay her legal expenses on appeal. Nevertheless, the judge ruled that she could "consider [M.B.'s] assets and income in reviewing the

_____

[6] On this same date, the Office of the Attorney General advised the Clerk of the Appellate Division that it had "superseded the [County] Prosecutor's Office and is now representing the State on both the appeal and defendant's cross-appeal . . . ." Although, at our request, the Attorney General participated in this appeal as an amicus, it did not take part in any of the proceedings before the trial court.

[d]efendant's claim for indigency." The judge found it significant that

> [d]efendant retained private counsel for all aspects of the trial at the trial court level, and also that [M.B.] is currently represented by private counsel. It seems to the [c]ourt, subsequent to a review of the briefs and exhibits filed by both parties, as if the [d]efendant filed for public defender representation almost entirely out of spite, having posted on a reputable New Jersey news website on several occasions taunting New Jersey taxpayers.[7] It also appears to the [c]ourt that the [d]efendant and her family live an upper middle to upper class lifestyle. Certainly, this is not the type of "needy" or "indigent" [d]efendant that requires the assistance of the [OPD].

The judge then stated that she would conduct an in camera plenary hearing[8] "to determine the [d]efendant's indigency." The judge ordered defendant to provide the following financial information in advance of that hearing:

> All Federal and State Tax Records filed by [defendant, M.B.,] or filed jointly by both parties for the years 2010-2014, [and]

---

[7] Contrary to the judge's finding, there is no evidence that defendant ever posted any comments to the website. The State asserts the comments were posted by M.B.

[8] The judge stated that "[d]ue to the potentially sensitive and private nature of the evidence that will likely be submitted at the plenary hearing, this hearing will be conducted in camera, away from the eyes and ears of the public." As previously noted, however, M.B.'s financial information had already been disclosed in the State's motion brief and these details were again discussed in open court at oral argument on the State's motion.

> Financial records relating to stocks, bonds, mutual fund accounts, IRA accounts, trust accounts, and life insurance held by or on behalf of [d]efendant or naming [d]efendant as beneficiary of the same.

The judge concluded her opinion by stating:

> After an assessment of the [d]efendant's full financial information, provided the [c]ourt determines that the [d]efendant is not in fact indigent, the [c]ourt will further issue an order 1) terminating the [OPD] from further representation of the [d]efendant, 2) directing the [d]efendant to retain private counsel, and 3) directing the [d]efendant or her husband to reimburse the [OPD] for the costs of litigation to date.

On May 7, 2014, the judge stayed the April 10, 2014 order at M.B.'s request so he could file a motion for leave to appeal to this court. The State did not file any opposition to M.B.'s motion, and we granted leave to appeal on June 2, 2014.

### III.

Although the State did not oppose M.B.'s motion for leave to appeal, it now asserts that leave to appeal was "improvidently granted." The State argues that M.B. lacks standing to appeal the judge's order requiring defendant to produce his financial information. We disagree.

It is well established that "a party aggrieved by a judgment may appeal therefrom. It is the general rule that to be aggrieved a party must have a personal or pecuniary interest

or property right adversely affected by the judgment in question." Howard Sav. Inst. v. Peep, 34 N.J. 494, 499 (1961) (citations omitted); see also Borough of Seaside Park v. Comm'r of N.J. Dep't of Educ., 432 N.J. Super. 167, 199 (App. Div. 2013).

This definition squarely fits M.B. In this case, the State divulged his personal financial information in its unsealed brief and again in an open court proceeding. The judge ordered defendant to turn over all of M.B.'s tax returns for a four-year period. The judge also stated that, if she concluded that defendant was not indigent, she would issue an order "directing [M.B.] to reimburse the [OPD] for the costs of litigation to date." Under these circumstances, M.B. was clearly a "party aggrieved by a judgment" and, therefore, he had standing to file his motion for leave to appeal.

IV.

On appeal, M.B. argues the judge erred by requiring defendant to provide his personal financial information. He asserts the judge's order violates his right to privacy concerning this information, and also argues that his financial records are protected from disclosure by his "spousal testimonial privilege"; "marital communication privilege"; and Fifth Amendment privilege against self-incrimination.

26                                                    A-4429-13T2

However, we need not address M.B.'s claims on these points because we are constrained to vacate the judge's order for a more fundamental reason: the trial court did not have jurisdiction to consider the State's motion to terminate the OPD's representation of defendant in her pending appeal.

As previously noted, Rule 2:9-1(a) clearly provides that "the supervision and control of the proceedings on appeal . . . shall be in the appellate court from the time the appeal is taken . . . ." Here, the State and defendant filed their notices of appeal in February 2013 and, at that time, "supervision and control of the proceedings" were transferred from the trial court to the Appellate Division.

Thus, when the State filed its motion to terminate the OPD's services over a year later, the trial court lacked the jurisdiction necessary to consider that motion. The facts of this case highlight the propriety of the result compelled by Rule 2:9-1(a). At the time the State filed its motion, the OPD had been representing defendant for thirteen months and was about to file its lengthy appellate brief on her behalf. Under these circumstances, the judge's order clearly had the capacity to interfere with the progress of the pending appeal by diverting the OPD from the task of completing the brief in order to address the State's motion, and by possibly requiring

defendant to start her appeal all over again with a new attorney. Simply stated, a proceeding aimed at disqualifying an attorney from representing a party in an appeal, should be commenced in this court not in the trial court.

As we have indicated, the State was not without a remedy to address its claim that defendant had sufficient funds to retain private counsel. Because "control and supervision" of the entire matter was before the Appellate Division, the prosecutor should have filed a motion with this court asking that the matter be temporarily remanded to the Assignment Judge to make a determination of defendant's indigency. That is the procedure clearly required by Rule 2:9-1(a).

We have considered, but rejected, issuing a sua sponte order remanding the matter to the Assignment Judge to consider defendant's indigency while defendant's appeal is pending. While individuals who are not truly indigent should not be represented by the OPD, challenges to OPD representation must be presented at the earliest possible time in order to avoid disrupting the pending proceeding. In re Custodian of Records, supra, 214 N.J. at 171.

Here, the State simply waited too long to challenge defendant's indigency and to seek to remove the OPD as defendant's attorney. The State concedes it has known that the

OPD was representing defendant on appeal since March 2013. It also asserts that it "had always known the defendant was not indigent[.]" Yet, it waited until just before the OPD was about to file defendant's brief in March 2014 to move to disqualify that agency from representing defendant. By that time, the OPD had already incurred most, if not all, of the costs necessary to represent defendant in the appeal. With the matter now fully briefed, and awaiting submission to this court for resolution, we will not further disrupt the appeal.

Instead, we vacate the Assignment Judge's April 10, 2014 order requiring defendant to turn over her and M.B.'s financial records for review. We remand this matter to the Assignment Judge to conduct an investigation of defendant's indigency <u>after</u> defendant's and the State's appeals have been fully resolved.[9] In this fashion, defendant's constitutional right to counsel on appeal will not be infringed and the OPD's representation of her in the long-standing appeal will not be disrupted.

At the same time, however, the public's interest in ensuring that only truly indigent individuals receive OPD representation will be served. As the OPD confirmed in its amicus brief and at oral argument, it has invoked its statutory

---

[9] The Assignment Judge may designate a different judge to handle the proceedings on remand pursuant to <u>N.J.S.A.</u> 2A:158A-15.1. We leave that determination to the sound discretion of the judge.

authority under N.J.S.A. 2A:158A-17a to place "a lien on any and all property to which the defendant shall have or acquire an interest." Thus, should the judge determine after the pending appeal is concluded that defendant was not indigent, she will be required to reimburse the OPD for the costs it incurred in representing her.

We provide the following further directions for the conduct of the proceedings on remand. First, the Supreme Court's decision in In re Custodian of Records clearly contemplates that the judge will conduct a confidential investigation rather than proceedings in open court as occurred here. Supra, 214 N.J. at 164. Thus, the judge should analyze defendant's 5A Form and any other financial documents obtained under N.J.S.A. 2A:158A-15.1 in camera. Ibid. Should the judge determine that he or she needs to question defendant under oath concerning the information set forth in her 5A Form, the judge should also conduct that proceeding in camera, with defendant having the opportunity to have her attorney present during the questioning.

Second, in no event should the assistant prosecutor who represented the State in defendant's trial participate in the remand proceedings. As the Court made clear, "a separate team of prosecutors and investigators[,] who [were] not involved with the pending case[,]" should have been assigned to handle the

State's investigation of defendant for theft or fraud in connection with her request for OPD services and to request that the OPD no longer be permitted to represent defendant on the appeal of her conviction and sentence. In re Custodian of Records, supra, 214 N.J. at 168-69. The Court specifically found that this procedure was necessary "to guard against improper accusations of abuse[.]" Id. at 168. Thus, while we anticipate that the State will have no further involvement in this case because this is not an "adversarial matter," we reiterate that the trial prosecutor should not participate in the proceedings on remand.

Third, consideration of defendant's indigency should be limited in the first instance to the financial information defendant provided in her 5A Form and whatever information the judge may obtain concerning defendant's economic status from public records as permitted by N.J.S.A. 2A:158A-15.1. Before requiring defendant to provide M.B.'s financial records or reviewing the records previously provided by the State, the judge should give M.B. the opportunity to provide a written submission outlining the privilege arguments he has raised on appeal, including his contention that the State improperly obtained his financial records through the use of grand jury subpoenas, so that the judge may consider those issues in the

31                                                                    A-4429-13T2

investigation.  Other than permitting such a written submission, we do not anticipate the need for further "assistance of counsel or experts" for the judge in the investigation, but nevertheless leave such a determination to the judge's sound discretion.  In re Custodian of Records, supra, 214 N.J. at 164, 166.

Fourth, because the factual record is insufficient to enable us to do so, we do not reach the issue of whether one spouse may be compelled to pay for the other spouse's legal expenses on appeal in a case where that spouse has been convicted of a crime.  However, in order to guide the remand, we make the following observations.

Unlike the judge, we do not believe that the Legislature intended, by enacting N.J.S.A. 2A:158A-14, to incorporate the "common law doctrine of necessities" into the factors used to consider whether a defendant who has been convicted of a crime is indigent.  As we specifically noted in the case primarily relied upon by the judge, there may be a distinction "between cases involving convictions and [those involving] acquittals because convictions reflect intentional wrongdoing or culpability for which the spouse should not be financially responsible."  DuBois, supra, 243 N.J. Super. at 186 n.6.

In this regard, N.J.S.A. 2A:158A-14e states that a defendant's "[n]eed [in part] shall be measured according to

. . . [w]here appropriate[,] the willingness and ability of the defendant's immediate family, friends or employer to assist the defendant in meeting defense costs." (Emphasis added). It is significant that, contrary to the "common law doctrine of necessities," which makes one spouse responsible for paying the necessary expenses of the other, the Legislature stated that the immediate family members' willingness and ability to assist the defendant must be considered. Ibid.

Here, M.B. filed an affidavit that made clear he was not willing to contribute to the expenses defendant would incur in her appeal from her criminal conviction. Thus, should the judge wish to consider M.B.'s financial status as part of the investigation, the judge should first make the threshold determination whether, based upon the clear language of N.J.S.A. 2A:158A-14e, an "unwilling spouse," perhaps concerned about the serious nature of an offense committed by the defendant, may nevertheless be compelled to pay the costs for the spouse's appeal of his or her conviction for that offense.

In her written decision, the judge stated that "[i]t seems to the [c]ourt . . . as if the [d]efendant filed for public defender representation almost entirely out of spite, having posted on a reputable New Jersey news website on several occasions taunting New Jersey's taxpayers." However, as we

observed above, there is nothing in the record to indicate that defendant had anything to do with the anonymous postings. Therefore, we do not discern any basis for the judge to consider these postings on the remand.

The judge also stated that the "most striking" of the facts indicating that defendant was not indigent "is that the [d]efendant retained private counsel for all aspects of the trial at the trial court level, and also that the [d]efendant's husband is currently represented by private counsel." Again, however, this fact has little, if any, relevance to the question of whether defendant is currently indigent.

The OPD has represented that it frequently provides legal services to individuals who, like defendant in this case, wish to appeal a conviction following a trial in which they were represented by private counsel. Indeed, the fact that a defendant has exhausted his or her financial resources paying for private representation at trial, is often a reason why the same defendant will qualify as indigent for purposes of OPD representation on appeal. Moreover, M.B.'s retention of an attorney to represent him after he learned that his financial information had been made available to the public is not a factor to be addressed in determining defendant's indigency.

In sum, we vacate the April 10, 2014 order and remand this matter to the Assignment Judge or her designee for a determination of defendant's indigency after the pending criminal appeal has been fully resolved by the Appellate Division.[10] At that time, the judge shall conduct an in camera investigation of the issue, and follow the directives set forth in this opinion. If the judge concludes that defendant is not indigent, the judge shall enter an appropriate order requiring defendant to reimburse the OPD for the costs of her representation in the appeal.

The April 10, 2014 order is vacated, and the matter remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] Should the case thereafter be pending in the Supreme Court, the judge should seek direction from the Court before proceeding.

A-4429-13T2