**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4439-15T2

IN THE MATTER OF HAZARDOUS DISCHARGE SITE
REMEDIATION FUND PUBLIC ENTITY GRANT
APPLICATION FOR REMEDIAL INVESTIGATION
AND REMEDIAL ACTION.

_____

Argued August 14, 2018 — Decided August 29, 2018

Before Judges Messano and Geiger.

On appeal from the New Jersey Department of Environmental Protection.

George J. Tyler argued the cause for appellant Barry Rosengarten (Tyler & Carmeli, PC, attorneys; George J. Tyler, of counsel and on the briefs; James Aversano, III, on the briefs).

Mark S. Heinzelmann, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mark S. Heinzelmann, on the brief).

PER CURIAM

Barry Rosengarten entered into a contract to sell certain property he owned in Perth Amboy to the County of Middlesex (the

County) for $5.15 million (the contract). Perth Amboy had previously designated the prior owner of the property, The Landings at Perth Amboy, LLC, the "redeveloper" of the property under the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -73. Rosengarten, however, warranted in the contract that he had successfully "de-designated" the property and was able to convey it for use as open space.

Environmental testing revealed contamination on the property, and the contract specifically required Rosengarten to remediate the site, as well as three additional "Areas of Concern" (AOCs) that were identified during "subsequent investigations." The County escrowed monies to be deducted from the purchase price and released to Rosengarten for remediation expenses he incurred. The County also agreed to cooperate and assist in securing grants through the Department of Environmental Protection (DEP) and Economic Development Authority (EDA), available from the Hazardous Discharge Site Remediation Fund (HDSRF), N.J.S.A. 58:10B-4, to recompense Rosengarten's remediation costs.[1] The contract,

---

[1] The HDSRF is a "revolving fund" established "in the New Jersey Economic Development Authority" (EDA) "dedicated for the provision of financial assistance or grants to municipalities, counties, redevelopment entities authorized to exercise redevelopment powers pursuant to [N.J.S.A. 40A:12A-4], and persons, for the purpose of financing remediation activities at sites at which there is, or is suspected of being, a discharge of hazardous substances or hazardous wastes." N.J.S.A. 58:10B-4.

however, provided that with respect to grant funding, the County had "no obligation to [Rosengarten] if" the costs were "not recovered or recoverable."

Rosengarten's counsel submitted a grant application on the County's behalf, seeking funding either as a Brownfield Development Area Grant, see N.J.S.A. 58:10B-6a(2)(a)(i); N.J.A.C. 19:31-8.3(b)(6), or as a 75 % Recreation and Conservation Grant, see N.J.S.A. 58:10B-6a(2)(a)(ii); N.J.A.C. 19:31-8.3(b)2). DEP denied the application.

In his April 28, 2016 letter, DEP's Chief of the Office of Brownfield Reuse, Timothy Bartle, noted Rosengarten was responsible for remediating the AOCs and did so. Therefore, "it was unclear" whether the County was eligible for funding. Bartle noted the contract might "demonstrate . . . Rosengarten was hired by the County to conduct remediation on the County's behalf," but, despite DEP's request, no one had supplied the contract for review.

The record reveals that in fact the contract had been forwarded to someone else in DEP. In a subsequent email to Rosengarten's counsel dated May 26, 2016, Bartle acknowledged his review of the contract, stating:

> [T]here is no language that would constitute a contract between [the] County and . . . Rosengarten to conduct remediation services on the County's behalf and certainly no language about payment to be made to . . . Rosengarten

for remediation services. . . . While my office can find the work appropriate and costs reasonable, we cannot recommend a grant to EDA for past work when the entity applying did not do the work nor pay for it. The denial of the application submitted by [the] County stands.[2]

This appeal ensued.

Rosengarten contends DEP premised its decision on misinterpretations of the applicable statutory provisions, regulations, and the contract. Therefore, denial of the application was arbitrary, capricious and unreasonable. DEP argues we should dismiss the appeal because the county has not appealed, and Rosengarten lacks standing to challenge the denial of the County's application. Alternatively, DEP contends it properly denied the application under N.J.S.A. 58:10B-6.

Initially, we dispense with DEP's argument that Rosengarten lacks standing and only the County, the grant applicant, could

---

[2] Rosengarten's notice of appeal seeks review of only the April 28, 2016 letter. We routinely limit our consideration to only the judgment or order listed in the notice of appeal. R. 2:5-1(f)(3)(A); Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1 (2018) ("[I]t is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review."). Nevertheless, at oral argument, Rosengarten clarified the sequence of events, and respondent DEP has not objected to our consideration of the email as its statement of reasons for the final agency decision denying the grant.

appeal its denial.[3]  We recently addressed a similar argument in New Jersey Department of Environmental Protection v. Exxon Mobil Corp., 453 N.J. Super. 272 (App. Div.), certif. denied, 233 N.J. 378 (2018).

There, we recognized the right of public interest citizens' groups to intervene on appeal to challenge DEP's settlement of an action brought under the Spill Act.  Id. at 301-03.  In particular, we noted prior decisions that recognized the standing of parties "affected by a judgment . . . to pursue an appeal if a party with a similar interest who actively litigated the case in the trial court has elected not to appeal."  Id. at 297 (quoting CFG Health Sys., L.L.C. v. Cty. of Essex, 411 N.J. Super. 378, 385 (App. Div. 2010)).  We also recognized the right of third parties to challenge DEP's decisions, id. at 299-300, if they have "a sufficient 'personal or pecuniary interest or property right adversely affected by the judgement.'"  Id. at 301 (quoting State v. A.L., 440 N.J. Super. 400, 418 (App. Div. 2015)).

Simply put, the record is clear that the County agreed to use its efforts to secure a grant to reimburse Rosengarten for remediation and associated costs.  DEP's denial of the grant

---

[3] DEP moved to dismiss the appeal on this ground.  We denied the motion without prejudice to DEP's right to reassert the argument before the merits panel.

directly and adversely affected Rosengarten's pecuniary interests. Rosengarten has standing, and we consider the merits of his appeal.

As DEP points out, grants to public entities under the HSDRF are governed by N.J.S.A. 58:10B-6a(2)(a), which provides in relevant part:

> Moneys shall be allocated to:
>
> <u>municipalities, counties, or redevelopment entities</u> authorized to exercise redevelopment powers pursuant to [N.J.S.A. 40A:12A-4], for:
>
> (i) projects in brownfield development areas pursuant to [N.J.S.A. 58:10B-5],
>
> (ii) matching grants . . . of up to 75 percent of the costs of the remedial action for projects involving the redevelopment of contaminated property for recreation and conservation purposes, provided that the use of the property for recreation and conservation purposes is included in the comprehensive plan for the development or redevelopment of contaminated property . . . .
>
> [<u>Ibid.</u> (emphasis added).]

Rosengarten acknowledges that under the plain meaning of the statutory terms, he is not eligible for a grant.

Instead, Rosengarten argues DEP's cramped interpretation of the statute when applied to the facts of this case is contrary to the overarching public purpose of the Brownfield and Contaminated Site Remediation Act, of which the HDSRF is a part. <u>See</u> N.J.S.A. 58:10B-4 (stating purpose of fund is to finance remediation

activities at sites where there is a discharge of hazardous substances or wastes); see also TAC Assocs. v. N.J. Dept. of Envtl Prot., 202 N.J. 533, 536-37 (2010) (explaining evolution of site remediation legislation and legislative history of the HDSRF).[4] He argues that the County met the eligibility requirements to receive grant monies from the HDSRF pursuant to N.J.S.A. 58:10B-5(c) and -6(a) (allowing financial assistance to counties who, by resolution, "acquire [(real property)] by voluntary conveyance . . . for recreation . . . purposes"), and N.J.A.C. 19:31-8.3(e) ("[p]reconditions to eligibility" for public entity grants).

Our standard of review of agency action is limited. In re Carter, 191 N.J. 474, 482 (2007) (citing Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 15-16 (2006)). "An appellate court affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171

---

[4] Rosengarten cites to one of our unpublished decisions in support of this proposition. Not only are unpublished decisions non-precedential, see R. 1:36-3, but also the grant at issue in that appeal was a so-called "innocent party grant," governed by an entirely different section of the HDSRF, since repealed. L. 2017, c. 353; see also TAC Assocs., 202 N.J. at 537 (explaining eligibility for grants made to "persons" under former N.J.S.A. 58:10B-5(d) and -6(a)(4)).

(2014) (quoting <u>City of Newark v. Natural Res. Council, Dep't of Envtl. Prot.</u>, 82 N.J. 530, 539 (1980)).

An agency decision should not be overturned unless there is "a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence." <u>Carter</u>, 191 N.J. at 482.

> To determine whether an agency decision "is arbitrary, capricious or unreasonable," an appellate court must determine
>
> > (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [<u>Lavezzi</u>, 219 <u>N.J.</u> at 171-72 (quoting <u>In re Stallworth</u>, 208 N.J. 182, 194 (2011)).]

"[O]ur task in statutory interpretation is to discern and effectuate the Legislature's intent[,]" <u>N.J. Dep't of Envtl. Prot. v. Huber</u>, 213 N.J. 338, 365 (2013), and we are not "bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." <u>Norfolk S. Ry. Co. v. Intermodal Props., LLC</u>, 215 N.J. 142, 165 (2013)). Nevertheless, we "defer to an

agency's expertise and superior knowledge of a particular field[,]" <u>Greenwood v. State Police Training Ctr.</u>, 127 N.J. 500, 513 (1992), including its reasonable statutory "construction in recognition of the agency's expertise." <u>TAC Assocs.</u>, 202 N.J. at 544 (citation omitted).

We agree with DEP that the County did not qualify for the public entity grant because it did not perform the remediation work, incur the costs and expenses associated with the work, or otherwise designate Rosengarten as a "redeveloper" or as its agent responsible for remediation. Under the contract, Rosengarten was required to remediate the site at his own expense and undertook that obligation as a precondition to his ability to transfer the property. Rosengarten argues his decision to forego potential residential development of the site resulted in a financial loss, suggesting DEP should have considered his alleged eleemosynary motivation. There is nothing in the statute or its regulations that suggest those considerations are relevant.

Moreover, under the regulations, it would appear that the County was not eligible for a recreation and conservation grant. N.J.A.C. 19:31-8.3(b)(2) provides public entities are eligible for:

> Matching grants of up to 75 percent of the costs of remedial action on contaminated real property to be used for recreation and

conservation purposes, <u>provided that such use is included in the comprehensive plan for the development or redevelopment of the real property and a permanent restriction regarding development and preserving such use is recorded and indexed with the deed</u> in the registry of deeds for the county in which the real property is located.

The record includes evidence that the County long ago adopted a plan for open space, but there is no evidence that this property was part of "a comprehensive plan for the development or redevelopment of the real property" with "a permanent restriction regarding development and preserving such use."

We acknowledge that under the regulations, a public entity may be eligible for a Brownfield Development Area Grant even if it does not own the property. N.J.A.C. 19:31-8.3(b)(6). However, "[n]o [such] grant shall be awarded unless the public entity has adopted a comprehensive plan for the development or redevelopment of contaminated, or potentially contaminated real property." N.J.A.C. 19:31-8.3(e)(1)(iii). This limitation is certainly consistent with the statutory requirement that public entity grants may only be made to "municipalities, counties, or redevelopment entities authorized to exercise redevelopment powers pursuant to [N.J.S.A. 40A:12A-4.]" N.J.S.A. 58:10B-6a(2)(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-4439-15T2